[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-14858

_____

D.C. Docket No. 9:11-cv-81138-KLR

JUAN MELGAREJO,

Plaintiff-Appellant,

versus

PYCSA PANAMA, S.A.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 17, 2013)

Before HULL and MARTIN, Circuit Judges, and HINKLE,[*] District Judge.

PER CURIAM:

Plaintiff-Appellant Juan Melgarejo appeals the dismissal of his complaint for lack of personal jurisdiction over Defendant-Appellee Pycsa Panama, S.A.  After careful review, and with the benefit of oral argument, we affirm.

## I.  FACTS AND PROCEDURAL HISTORY

This appeal involves Florida's Long Arm Statute.  See Fla. Stat. § 48.193. Under subsection (2), courts in Florida have "general jurisdiction" over a non-resident defendant if that defendant engages in "substantial and not isolated" activity in Florida, whether or not the cause of action arose from that Florida activity.  Id. § 48.193(2).  But, even if a defendant does not engage in substantial activity in Florida, Florida courts have specific jurisdiction over a defendant if the asserted cause of action "arises from" that defendant's "conducting" or "carrying on" a business in Florida or having "an office or agency" in Florida.  Id. § 48.193(1)(a)(1) (emphasis added).

With that background, we set forth some information about the parties and then describe the events that gave rise to Melgarejo's cause of action here, highlighting the facts relevant to our personal jurisdiction analysis.[1]

_____

[*]Honorable Robert L. Hinkle, United States District Judge for the Northern District of Florida, sitting by designation.

2

## A.    The Parties

Defendant Pycsa Panama, S.A. ("Pycsa") is a Panamanian corporation whose headquarters are in Panama City, Panama.  It is a wholly owned subsidiary of Pycsa International, Limited ("Pycsa International"), a Cayman Islands corporation.  Pycsa International is owned by Mayford Development, Limited ("Mayford Development"), a Bahamas corporation.

In 1994, Panama's Ministry of Public Works awarded a contract to defendant Pycsa to design, construct, maintain, and operate a tollway around Panama City, Panama.  This project consisted of two segments—the Northern Corridor and the Panama-Colon Highway, also referred to as the Madden Segment.[2]  All work for the project was to be conducted in Panama.

---

[1]The evidence before the district court included, inter alia: (1) the 1997 employment agreement between plaintiff Melgarejo and defendant Pycsa; (2) an April 2012 affidavit of Charles Haddad, the chief executive officer of Pycsa since 2009; (3) the April 2012 and June 2012 affidavits of Maximo Haddad, the president of a company owned by the same parent company as Pycsa and the former president of Pycsa; (4) an affidavit submitted by plaintiff Melgarejo; (5) a copy of a complaint filed by Pycsa in another case in the Southern District of Florida; and (6) an affidavit of a Panamanian attorney stating his opinion that the Panama judicial system is corrupt.  We base our description of the facts on these materials and the district court's findings of fact.

[2]In an affidavit, Pycsa's current chief executive officer stated that the two parts of the tollway project were the "Northern Corridor" and the "Panama-Colon Highway."  However, other record evidence states that the two parts were the "Northern Corridor" and the "Madden Project" or "Madden Segment."  Nothing in the record addresses this discrepancy.  However, in its brief to this Court, Pycsa agrees that the tollway project consisted of the "Northern Corridor" and the "Madden Segment."  Accordingly, we assume that the "Panama-Colon Highway" and the "Madden Segment" refer to the same project.

3

Plaintiff Melgarejo is a professional engineer who holds a Ph.D. from the University of Michigan. He became a full-time resident of Florida in 1989. From 1989 until 1996, Melgarejo lived in Orlando, Florida, and in 1996, Melgarejo moved to Singer Island, Florida. From 1991 until 2002, he also maintained a home in Mexico City, Mexico. Since 2002, Melgarejo has lived with his family in Weston, Florida.

## B.    The 1997 Employment Agreement

On October 6, 1997, plaintiff Pycsa hired defendant Melgarejo to serve as its "Director" and to manage the Panama tollway project. Pycsa and Melgarejo entered into an employment agreement (the "agreement"), which required Melgarejo to "devote [his] time and effort to managing Construction of the Project . . . necessary to efficiently bring the Project to Completion and into Operation." The agreement defined "Completion" as "the later of Completion . . . of the Northern Corridor and Completion . . . of the Madden Segment." The agreement required Melgarejo to "follow all directions of [Pycsa's] board of directors" and "inform the board of directors of [Pycsa's] affairs." The agreement provided that Panamanian law governed.

Under the agreement, plaintiff Melgarejo was to receive $250,000 (in United States currency) upon completion of the Northern Corridor and that same amount upon completion of the Madden Segment. Additionally, Melgarejo was entitled to

4

$500,000 (in United States currency) if other debt-service related criteria were met. The agreement required that defendant Pycsa provide Melgarejo with: (1) "an automobile in Panama"; (2) "air transport . . . to and from [his] home to Panama"; (3) "lodging in Panama"; and (4) reimbursements for all "travel, business and other expenses reasonably incurred in connection with [his] services to [Pycsa]." Compensation under the agreement was to be "paid only from [bond] Distributions."

It is undisputed that the parties signed the agreement at the Panamanian Consulate in New York, New York. However, there is conflicting evidence as to where the parties negotiated the agreement prior to signing it.

In affidavit testimony, plaintiff Melgarejo stated that he "negotiated [the agreement] in New York City, Palm Beach, Florida, and Panama in meetings and telephone conversations with Max Haddad, then President of PYCSA, and PYCSA's New York counsel, David Spencer."[3]  Melgarejo stated that, during the course of these negotiations, he "met with Mr. Spencer in New York City (and not just at the Panamanian Consul, but on U.S. soil), with Max Haddad at his home in Palm Beach, Florida, and also in Panama." Melgarejo claimed that he "spoke with Mr. Spencer many times by telephone from [Melgarejo's] home in Singer Island, Florida, as well as from [his] home in Mexico City, Mexico."

---

[3]Melgarejo is Maximo Haddad's nephew.

In contrast, Maximo Haddad stated that he, as Pycsa's president, signed the employment agreement and never met "with [Melgarejo] in Florida or New York to discuss or negotiate the terms of the contract." In particular, Haddad stated that "[a]ll negotiations between Pycsa and Melgarejo prior to the signing of the contract were conducted in Panama or Mexico City." Haddad acknowledged that he had a home in Florida, but stated that his primary residence was in Panama City, Panama and that he spent only "limited time" at his Florida residence.

## C.    2001 Termination of the Agreement and 2010 Panama Suit

From 1997 until 2001, plaintiff Melgarejo performed his work under the agreement. During that time, all of the work that Melgarejo did for defendant Pycsa occurred in either Panama or Mexico. On July 1, 2001, he voluntarily resigned his position with Pycsa. After Melgarejo did so, it is undisputed that Pycsa did not pay him any of the sums set forth in the agreement. At some point, Pycsa informed Melgarejo that it would not pay him for his work.

On approximately July 30, 2010, over nine years after he voluntarily terminated the agreement, Melgarejo filed a complaint in Panamanian court (the "Panama suit"). In the Panama suit, Melgarejo claimed that Pycsa had breached the agreement. He sought to recover compensation allegedly owed under the agreement. As of 2012, that lawsuit remained pending in Panama and the parties had filed responses and begun discovery. However, Melgarejo testified in an

6

affidavit that he "[did] not believe that [he] can obtain a fair hearing or justice from the Panamanian courts against PYCSA because [he] [is] not wealthy or as well-connected as . . . PYCSA."

### D.    Melgarejo's 2011 Federal Complaint

Over a year after filing the Panama suit, on October 12, 2011, Melgarejo filed a complaint in the United States District Court for the Southern District of Florida (the "federal complaint"). Melgarejo's federal complaint contained three anticipatory breach of contract claims, each one based on the agreement. For all claims, Melgarejo sought a total of $1,000,000—the maximum compensation possible under the agreement. The claims and requested relief in Melgarejo's federal complaint are substantially identical to the claims and requested relief in Melgarejo's Panama suit.

Melgarejo's federal complaint alleged that the district court had personal jurisdiction over defendant Pycsa in Florida because: (1) Pycsa had "an office or agency in [Florida]"; (2) Pycsa "utilized its affiliate office in Miami, Florida to receive mail in the United States in connection with the subject matter of Dr. Melgarejo's contract with PYCSA and to coordinate portions of the project that Dr. Melgarejo managed"; and (3) Pycsa had "purposefully availed itself of the benefits and protections of [the Southern District of Florida] by filing a lawsuit in [the] district in connection with the project, styled Pycsa Panama, S.A. v. Tensar Earth

7

<u>Techno</u>, U.S. District Court for the Southern District of Florida, Civil Action No.: 1:06-cv-20624-ASG" (the "<u>Tensar</u> case"). For these reasons, Melgarejo contended that personal jurisdiction existed over defendant Pycsa under Florida's Long-Arm Statute, Fla. Stat. § 48.193(1)(a).

The federal complaint alleged that "[Pycsa] has sufficient continuous and systematic contacts with Florida so that general jurisdiction exists and Panama is not an available alternative forum because Panama's judicial system is corrupt and its problems would preclude [Melgarejo] the fair and reasonably expeditious adjudication of his claims."

**E.      Pycsa's Motion to Dismiss for Lack of Personal Jurisdiction**

Defendant Pycsa responded with a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), or in the alternative, on <u>forum non conveniens</u> grounds.

Defendant Pycsa's evidence, attached to its motion, showed that Pycsa: (1) "has never had an office, sales representative, agent or employees in Florida"; (2) "has no mailing address or telephone number or listing in Florida"; (3) "owns no real property in the United States"; (4) "does not have a bank account in Florida"; (5) "has never had a banking relationship with any United States institution with the exception of the Bank of New York, solely in connection with the Indenture

dated October 6, 1997"; and (6) "has never owned any of the bonds issued by any U.S. institution."

Although Pycsa itself did not have "an office or agency" in Florida, Pysca acknowledged that "it did utilize in the past an affiliate's office as a matter of convenience for the limited purpose of receiving U.S. correspondence and facilitating the procurement of materials for shipment abroad."  That "affiliate" was MHMS Incorporated ("MHMS").

In an affidavit, Pycsa's former president, Maximo Haddad, stated that he has served as the president of MHMS since 2002.  Haddad's affidavit states that: (1) MHMS is an Arizona corporation, which owns and operates an office complex in California; (2) Pycsa International, a Cayman Islands corporation, owns both Pycsa and MHMS; but (3) MHMS "does not conduct, and has never conducted, business with or for [defendant] Pycsa"; and (4) MHMS "has never conducted business with [plaintiff] Melgarejo" and "has no involvement with toll road projects located in Panama."

In his affidavit, Haddad acknowledged that "MHMS did lease and maintain a small office located at 200 So. Biscayne Blvd., 27th Floor, Miami, Florida, from May 2003 until August 2008, which was used for the company's business."  But, "[t]o the best of his knowledge, the office was never used by Pycsa . . . or . . .

9

Melgarejo, other than Pycsa receiving mail or ordering some materials for use in Panama."

Regarding MHMS's office in Florida, Pycsa emphasized that: (1) "MHMS did not perform any business activities on behalf of Pycsa"; (2) MHMS "is a completely separate entity from Pycsa"; (3) MHMS "has no ties to Pycsa other than a shared corporate parent"; and (4) MHMS's activity in Florida cannot be attributed to Pycsa.

Defendant Pycsa's motion also addressed its lawsuit in Florida: the <u>Tensar</u> case. Pycsa filed that lawsuit against Tensar, the manufacturer of retaining wall systems, alleging claims based on the failure of Tensar's retaining walls. Pycsa pointed out that the <u>Tensar</u> case involved a completely different subject matter than the employment contract in dispute with Melgarjo. Pycsa further argued that its contacts with Florida were insufficient to satisfy the due process test for personal jurisdiction.

## F. Melgarejo's Response in Opposition to Pycsa's Motion to Dismiss

In response to Pycsa's motion to dismiss, plaintiff Melgarejo filed a copy of Pycsa's complaint in the <u>Tensar</u> case. The <u>Tensar</u> case involved claims of products liability, negligence, negligent hiring, and negligent supervision. Each claim was based on the collapse of two Tensar retaining walls that Pycsa used in constructing

10

the Northern Corridor (which was one of the projects that Melgarejo managed between 1997 and 2001).

Pycsa's <u>Tensar</u> complaint alleged that, in 2002, Tensar approached Pycsa about providing retaining walls for the Northern Corridor project. Melgarejo had already left Pycsa in 2001. Pycsa hired Tensar in 2002 and used Tensar retaining walls at places in Panama. In 2003 and 2004, two of those retaining walls collapsed.

In its <u>Tensar</u> complaint, Pycsa stated that it was a Panamanian corporation with its principal place of business in Panama, but that, during "all times relevant hereto, Pycsa utilized its affiliate office in Miami, Florida to receive mail in the United States and to coordinate the procurement and shipment of U.S. materials, including those materials utilized by Tensar in implementing the . . . retaining wall system at issue herein."

Thus, Melgarejo argued that personal jurisdiction over Pycsa was appropriate under Florida's Long-Arm Statute "because Pycsa used its affiliate's office in Miami to receive mail and procure supplies in connection with the construction of the Panamanian toll roads that are the subject of Dr. Melgarejo's contract claim." Melgarejo also asserted that the Due Process Clause was satisfied because Pycsa had "conducted, engaged in and carried on business in Florida in connection with building the Panamanian toll roads."

11

## G.    District Court's Personal Jurisdiction Order

The district court granted defendant Pycsa's motion to dismiss for lack of personal jurisdiction over Pycsa in Florida.  The district court quoted subsection 1(a)(1) of Fla. Stat. § 48.193, which provides that Florida courts have personal jurisdiction over a non-resident defendant when the claims arise from the non-resident defendant's operating or carrying on a business within Florida, or having an "office or agency" in the state.  Fla. Stat. § 48.193(1)(a)(1).  The district court concluded that, under Florida's Long-Arm Statute, there was no specific personal jurisdiction over defendant Pycsa because plaintiff Melgarejo's claims "do not arise out of Pycsa's business activities in Florida."  The district court made a finding that "MHMS is a completely separate company and is only affiliated with Pycsa in that they share a common corporate parent" and "MHMS's office was used by Pycsa sparingly in the past, but never for any meetings, negotiations, or supervision of the contract involving Pycsa and [Melgarejo]."

The district court also found that Florida's Long-Arm Statute did not allow for general personal jurisdiction over Pycsa in Florida because "Pycsa's minimal use of an affiliate's office to perform ministerial tasks unrelated to the [employment] contract in no way amount[ed] to the level of 'substantial and not isolated activity' within [Florida] that is required to establish general jurisdiction over a foreign, non-resident defendant."

12

Although the district court found statutory jurisdiction under Florida law lacking, it also rendered an alternative holding that exercising personal jurisdiction over Pycsa in Florida would violate the Fourteenth Amendment's Due Process Clause. This was because "Pycsa does not conduct, engage in, or carry on business in Florida" and plaintiff Melgarejo's claims "do not arise out of any activities Pycsa performed (or failed to perform) in Florida." Thus, there was no "reasonable basis for Pycsa to anticipate being haled into court in Florida." The district court concluded that exercising personal jurisdiction over defendant Pycsa in Florida would not comport with "fair play and substantial justice" because "Pycsa would be greatly burdened by having to come from Panama to defend a lawsuit in Florida." This was particularly true when Melgarejo could "easily and effectively obtain relief in Panama for his alleged damages, seeing as he has already commenced litigation in Panama arising out of the same subject matter."

The district court thus dismissed Melgarejo's complaint for lack of personal jurisdiction and did not consider Pycsa's alternative ground for dismissal—forum non conveniens.

Melgarejo timely appealed.

## II. DISCUSSION

### A.  Personal Jurisdiction Questions

We consider two questions in resolving whether personal jurisdiction exists. See Mutual Serv. Ins. Co. v. Frit Indus., Inc., 358 F.3d 1312, 1319 (11th Cir. 2004).[4] "First, we determine whether the exercise of jurisdiction is appropriate under the forum state's long-arm statute." Id. "Second, we examine whether the exercise of personal jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution . . . ." Id. The Due Process Clause "requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice." Id. (internal quotation marks and citations omitted).

## B.    Florida's Long-Arm Statute

Because Florida is the forum state, we start our analysis with Florida's Long-Arm Statute. See Fla. Stat. § 48.193. "Florida's long-arm statute is to be strictly construed." Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 627 (11th Cir. 1996).

---

[4]"[T]he issue of whether personal jurisdiction is present is a question of law and subject to de novo review." Oldfield v. Pueblo De Bahia Lora, S.A., 558 F.3d 1210, 1217 (11th Cir. 2009). "Findings of fact that bear on personal jurisdiction are reviewed for clear error." Merial Ltd. v. Cipla Ltd., 681 F.3d 1283, 1292 (11th Cir. 2012). A plaintiff seeking to establish personal jurisdiction over a nonresident defendant "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009). In a case like this one, where a defendant challenges personal jurisdiction "by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." Id. (internal quotation marks and citation omitted).

On appeal, plaintiff Melgarejo relies only on subsection (1)(a)(1) of Florida's Long-Arm Statute, which, as noted before, provides that courts may exercise personal jurisdiction over a non-resident defendant "for any cause of action arising from" any of the following acts: "[o]perating, conducting, engaging in, or carrying on a business or business venture in [Florida] or having an office or agency in [Florida]." Id. § 48.193(1)(a)(1).[5] Thus, to establish personal jurisdiction under Fla. Stat. § 48.193(1)(a)(1), the cause of action must arise from the defendant's business activity.

Because the reach of Florida's Long-Arm Statute "is a question of Florida law," this Court, sitting in diversity jurisdiction, is required to construe the statute "as would the Florida Supreme Court." United Techs., 556 F.3d at 1274 (internal quotation marks and citation omitted). We are also bound to adhere to the interpretations of Florida's Long-Arm Statute offered by Florida's District Courts of Appeal "[a]bsent some indication that the Florida Supreme Court would hold otherwise." Id. (internal quotation marks and citation omitted).

The Florida Supreme Court has explained that determining whether jurisdiction is appropriate under Florida's Long-Arm Statute is a separate inquiry from determining whether exercising personal jurisdiction comports with the Due

---

[5] While before the district court Melgarejo argued for general jurisdiction under Fla. Stat. § 48.193(2), he apparently has abandoned those arguments on appeal. Thus, we consider only whether specific personal jurisdiction exists under Fla. Stat. § 48.193(1)(a)(1). To the extent that Melgarejo does attempt to make a general jurisdiction argument, such an argument is meritless.

15

Process Clause. See Internet Solutions Corp. v. Marshall, 39 So. 3d 1201, 1207 (Fla. 2010) ("[T]he federal due process analysis is not built into Florida's long-arm statute . . . ."); see also Cable/Home Commc'n Corp. v. Network Prods., Inc., 902 F.2d 829, 856 (11th Cir. 1990).

Accordingly, "[t]he mere proof of any one of the several circumstances enumerated in [Florida's Long-Arm Statute] as the basis for obtaining jurisdiction of nonresidents does not automatically satisfy the due process requirement of minimum contacts." Venetian Salami Co. v. Parthenais, 554 So. 2d 499, 502 (Fla. 1989). In short, the Due Process Clause "imposes a more restrictive requirement" than does Florida's Long-Arm Statute. Internet Solutions, 39 So. 3d at 1207 (internal quotation marks and citation omitted).

## C.    Florida Long-Arm Statute Analysis

With these background principles in mind, we turn to whether defendant Pycsa was conducting business in Florida and whether Melgarejo's claims arise from that business.

To establish that a defendant is "conducting" or "carrying on a business" for the purposes of Fla. Stat. § 48.193(1)(a)(1), "the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d

16

1247, 1249 (11th Cir. 2000) (applying Fla. Stat. § 48.193(1)(a)(1) in diversity jurisdiction case).

We previously identified factors relevant to whether a plaintiff has shown a defendant's "general course of business activity," including: (1) "the presence and operation of an office in Florida," (2) "the possession and maintenance of a license to do business in Florida," (3) "the number of Florida clients served," and (4) "the percentage of overall revenue gleaned from Florida clients." Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A., 421 F.3d 1162, 1167 (11th Cir. 2005) (applying Fla. Stat. § 48.193(1)(a)(1) in diversity jurisdiction case) (citing Milberg Factors, Inc. v. Greenbaum, 585 So. 2d 1089, 1091 (Fla. 3d DCA 1991); Hobbs v. Don Mealey Chevrolet, Inc., 642 So. 2d 1149, 1153 (Fla. 5th DCA 1994); Sculptchair, 94 F.3d at 628). It is undisputed that, during the relevant period, Pycsa had no Florida business license, served no Florida clients, and thus did not glean any revenue from Florida clients.

Melgarejo places great weight on the first factor and cites Pycsa's statement in the Tensar lawsuit (and its subsequent admission in this lawsuit) about having an "affiliate office in Miami." Melgarejo contends that this statement reveals that Pycsa had an office in Florida. The record, however, shows that this was not the case. Although MHMS had a small Miami office, the district court found that Pycsa conducted only occasional and insignificant business operations from

17

MHMS's Miami office.  Pycsa's use of the MHMS office does not establish the sort of "general course of business activity" necessary for personal jurisdiction under Fla. Stat. § 48.193(1)(a)(1).  See Future Tech., 218 F.3d at 1249.  Additionally, MHMS's Miami business operations are not attributed to Pycsa, as MHMS and Pycsa are separate corporate entities whose only connection is a common corporate parent.

Moreover, even though Pycsa did conduct some business through MHMS's Miami office, there is nothing in the record linking those business operations with Melgarejo's cause of action in this case.  Florida's Long-Arm Statute requires that a plaintiff's claim "aris[e] from" a non-resident defendant's Florida-based business operations.  Fla. Stat. § 48.193(1)(a).  Florida's First District Court of Appeal has explained that although the term "'arising from' is broad," it nevertheless "requires a 'direct affiliation,' 'nexus,' or 'substantial connection' to exist between the basis for the cause of action and the business activity."  Citicorp Ins. Brokers (Marine), Ltd. v. Charman, 635 So. 2d 79, 82 (Fla. 1st DCA 1994) (internal quotation marks omitted).  The record reveals only that Pycsa used MHMS's office to receive mail and order some materials for use in Panama.  There is no evidence that the mail or materials received in that affiliate office had anything to do with Melgarejo's employment contract.  The district court did not, and we cannot infer from these

18

facts that the mail that Pycsa received or the materials that it ordered were substantially connected to Melgarejo's employment with Pycsa.

Melgarejo also contends that he was Pycsa's "agent" within the meaning of the Florida statute and that personal jurisdiction over Pycsa exists because Melgarejo performed business activities on Pycsa's behalf in Florida. Notably, Melgarejo did not raise this argument before the district court. "It is well established in this circuit that, absent extraordinary circumstances, legal theories and arguments not raised squarely before the district court cannot be broached for the first time on appeal." Bryant v. Jones, 575 F.3d 1281, 1308 (11th Cir. 2009). Even if we were to consider the merits of this argument, we would reject it. Nothing in the record suggests that Melgarejo was Pycsa's agent in Florida or that he conducted any business for Pycsa there.

Next, plaintiff Melgarejo argues that personal jurisdiction exists because his claims arise from an employment contract between a non-resident defendant and a Florida resident, which, according to Melgarejo, was partially negotiated in Florida. This argument also fails. Even if we "construe all reasonable inferences" in favor of Melgarejo, see Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002), and accept as true his statement that some contract negotiations occurred in Florida, this fact alone does not establish that Pycsa was conducting or carrying on a business in Florida, as Fla. Stat. § 48.193(1)(a)(1)

19

requires, see Future Tech., 218 F.3d at 1249.[6]  In Sculptchair, we held that the non-resident defendant was not "carrying on a business or business venture in Florida" when her only ties to Florida were "a series of telephone conversations with [the president of the plaintiff-company's] Florida office and a one-hour meeting to facilitate a contract to be performed wholly in Canada."  94 F.3d at 628.  Similarly here, even if some Pycsa official visited Florida for the specific purpose of negotiating with Melgarejo, "[w]e have no difficulty concluding that [Pycsa's] limited . . . activities fail to qualify as carrying on a business or business venture in Florida."  See id.[7]

To the extent that Melgarejo raises an additional argument that by filing a complaint in Florida, Pycsa subjected itself to personal jurisdiction in Florida as to future claims involving a similar subject-matter, this argument also fails.[8]

---

[6]And there was no evidence that Melgarejo personally ever went to the affiliate office and no evidence that any negotiation for his employment agreement occurred in that affiliate office.

[7]The district court rejected this argument, stating: "[t]he contract was negotiated between Maximo Haddad and [Melgarejo] in meetings held in Panama and Mexico, and Pycsa denies that any negotiations involving this contract ever took place in Florida."  We could construe this statement as an implied finding of fact that contract negotiations did not occur in Florida.  Based on the undisputed facts in the record—the agreement pertained to construction projects in Panama, Pycsa had no employees or more than de minimis business operations in Florida, the agreement was not signed in Florida, Pycsa's counsel was not located in Florida—we would not then say that the finding was clearly erroneous.  See Merial Ltd., 681 F.3d at 1292.  However, even without construing the district court's order as containing such a finding of fact, the argument fails.

[8]It is unclear from Melgarejo's briefs on appeal whether or not he attempts to assert such an argument.  On the one hand, Melgarejo points out that Pycsa sued Tensar in Florida and argues that "it [is] fair to litigate in Florida today what was litigated yesterday, unless there is something today that makes Florida an inconvenient forum."  However, Melgarejo also

20

It is well-settled under Florida law that filing suit in Florida subjects a party to jurisdiction regarding "such lawful orders which are thereafter entered with respect to the subject matter of the action." Trs. of Columbia Univ. in the City of N.Y. v. Ocean World, S.A., 12 So. 3d 788 (Fla. 4th DCA 2009) (internal quotation marks and citation omitted). However, "[a] current defendant's prior decision to bring a suit in Florida should not act indefinitely as a sword of Damocles hanging perilously over the head of that defendant if [it] later challenges jurisdiction in a separate suit (albeit a suit arising from the same subject matter)." Gibbons v. Brown, 716 So. 2d 868, 870 (Fla. 1st DCA 1998).

In Gibbons, the state appellate court held that, by bringing claims in Florida state court based on a car accident that had occurred in Canada, the non-resident defendant, Gibbons, had not subjected herself to personal jurisdiction in Florida regarding all future claims based on that same car accident. Id. at 870–71. The state appellate court found that there was no personal jurisdiction based on two facts: (1) Gibbons had filed her suit two years earlier; and (2) plaintiff Brown, had not been a party to Gibbons's earlier action. Id. at 871.

---

acknowledges that "[s]uing in Florida is not by itself a basis for continuing jurisdiction over the plaintiff in a later case." Melgarejo's statements are difficult to reconcile. Construing his briefs liberally, we address any argument that he may attempt to make regarding the effect of the Tensar case in our personal jurisdiction analysis.

21

Similarly here, Pycsa filed its <u>Tensar</u> lawsuit more than five years before Melgarejo filed his complaint in this case. Moreover, Melgarejo was not a party to the <u>Tensar</u> case. Accordingly, the <u>Tensar</u> case does not "act indefinitely as a sword of Damocles hanging perilously over" Pycsa's head, precluding it from successfully contesting personal jurisdiction in future cases like this one. See <u>Gibbons</u>, 716 So. 2d at 870.

Because the district court properly concluded there is no basis for specific personal jurisdiction under Fla. Stat. § 48.193(1)(a)(1), we do not reach the second question of the personal jurisdiction analysis—whether such an exercise of personal jurisdiction would be constitutional. See <u>Madara v. Hall</u>, 916 F.2d 1510, 1514 (11th Cir. 1990) ("Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a nonresident defendant.").

**D.    <u>Forum Non Conveniens</u> Issue**

We also do not address Pycsa's alternative grounds for dismissal: the <u>forum non conveniens</u> doctrine. The district court held that there was no personal jurisdiction, and we find no error in that decision.

On appeal, Melgarejo maintains that "[t]he District Court abused its discretion by granting [Pycsa's] motion to dismiss under the doctrine of <u>forum non conveniens</u>." Melgarejo further maintains that the district court erred by failing to consider evidentiary materials that he submitted which were relevant to the <u>forum</u>

22

non conveniens issue, including affidavits and documents describing corruption in Panama's court system. Melgarejo is wrong. The district court properly declined to rule on the forum non conveniens issue. It is settled that "the doctrine of forum non conveniens can never apply if there is absence of [personal] jurisdiction." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 504, 67 S. Ct. 839, 841 (1947). By finding a lack of personal jurisdiction, the district court necessarily concluded that the doctrine of forum non conveniens did not apply and, thus, did not need to consider evidence relevant to that issue.[9]

Because the district court lacked personal jurisdiction over Pycsa, we also decline to consider issues relevant only to the forum non conveniens analysis, such as the availability of "an adequate alternative forum" and whether a plaintiff can "reinstate [its] suit in the alternative forum without undue inconvenience or prejudice." See Galbert v. W. Caribbean Airways, 715 F.3d 1290, 1295 (11th Cir. 2013).

## E.    District Court's Failure to Hold an Evidentiary Hearing

The district court ruled on Pycsa's motion to dismiss without holding an evidentiary hearing to resolve disputed jurisdictional facts. Melgarejo argues that this is reversible error. We disagree.

---

[9]The district court did discuss whether Melgarejo could bring his claims in an alternative forum and the burden on Pycsa of having to litigate the case in Florida. These issues are potentially relevant in a forum non conveniens analysis. However, the district court discussed them under the rubric of due process, not forum non conveniens.

This Court has previously explained that "when a defendant moves to dismiss for lack of personal jurisdiction, an evidentiary hearing is not required." Mut. Serv. Ins. Co. v. Frit Indus., Inc., 358 F.3d 1312, 1319 n.6 (11th Cir. 2004). When a district court does not hold a hearing, "the plaintiff must establish a prima facie case of personal jurisdiction" by presenting "sufficient evidence by way of affidavits or deposition testimony to survive a motion for a directed verdict." Id. A district court then "must construe the allegations in the complaint as true if they are not contradicted by [the] defendant's evidence." Id. When there is conflicting evidence, "the district court must construe all reasonable inferences in favor of [the] plaintiff." Id.

The district court followed this procedure here. After Pycsa challenged personal jurisdiction, the district court gave Melgarejo an opportunity to respond with evidentiary materials sufficient to establish a prima facie case of personal jurisdiction. Although there was conflicting evidence, the district court did not fail to "construe all reasonable inferences in favor of [Melgarejo]." See id. Accordingly, the district court did not err by failing to hold an evidentiary hearing.

Alternatively, any error based on the district court's failure to conduct an evidentiary hearing was harmless. Had the district court conducted a hearing and found credible Melgarejo's testimony that contract negotiations occurred in

24

Florida, that finding would not have changed the district court's personal jurisdiction analysis, for the reasons that we discussed above.

## III.  CONCLUSION

In sum, we affirm the district court's dismissal for lack of personal jurisdiction.

**AFFIRMED.**