Tawana **CARMOUCHE**, Plaintiff,

v.

**CARNIVAL CORPORATION** d/b/a Carnival Cruise Lines, and Tamborlee Management, Inc., d/b/a Belize Paradise Ltd., Defendants.

Case No. 13–62584–CV.

United States District Court, S.D. Florida.

Signed Aug. 6, 2014.

Filed Aug. 7, 2014.

David C. Whitmore, Scheuermann & Jones, New Orleans, LA, Alvin Ernest Entin, Entin & Della Fera, Fort Lauderdale, FL, for Plaintiff.

Amanda Jean Sharkey Ross, Gregory R. Elder, Jeffrey Eric Foreman, Noah Daniel Silverman, Foreman Friedman, PA, Miami, FL, for Carnival Corp.

Carlos J. Chardon, Jerry D. Hamilton, Hamilton, Miller & Birthisel, LLP, Miami FL, for Tamborlee Management, Inc.

### ORDER GRANTING DEFENDANT TAMBORLEE'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

WILLIAM P. DIMITROULEAS, District Judge.

This matter is before the Court upon Defendant Tamborlee Management, Inc.

d/b/a Belize Paradise, Ltd. ("Tamborlee")'s Motion to Dismiss for Lack of Personal Jurisdiction [DE 35], filed herein on June 10, 2014. The Court has reviewed the Motion, responses and replies, all exhibits filed in the record, and is otherwise fully advised in the premises.

## I. *BACKGROUND*

Plaintiff commenced the instant action on November 26, 2013. [DE 1]. According to the allegations of the Complaint, this is an action for negligence that arose on a shore excursion which was alleged to have been organized, promoted, advertised, marketed vouched for, and sold by Defendant Carnival Corporation ("Carnival") for its cruise passengers, including Plaintiff. ¶¶ 6, 10, 13. Defendant, Tamborlee Management, Inc., d/b/a Belize Paradise Limited ("Tamborlee") operated shore excursions for Carnival passengers in Belize and owned or had control over the facilities where Carnival's passengers were taken, and equipment, including vehicles, utilized by said passengers on such excursion. ¶ 19.

The cruise excursion on which the incident occurred took place in Belize. ¶ 9. On November 29, 2012, while on a Tamborlee shore excursion in Belize, "Plaintiff was riding on a bench in the back of a vehicle provided part of the excursion that had no seatbelts or harnesses when, suddenly and without warning, she was thrown across the vehicle onto a steel bench on the other side of the vehicle, causing her to fracture her ankle in multiple places as well as dislocating it." ¶ 14.

Plaintiff's Complaint [DE 1] asserts two counts against Defendants, as follows: Count I—Negligence and Other Actions and Inactions of Carnival; and Count II— Negligence and Other Actions and Inactions of Tamborlee.

Defendant Carnival moved to dismiss Plaintiff's Complaint, which Motion the Court granted in part and denied in part on May 15, 2014. *See* [DE 33]. On May 29, 2014, Carnival filed its Answer and Affirmative Defenses. *See* [DE 34].

On May 4, 2014, Defendant Tamborlee first moved to dismiss for lack of personal jurisdiction. *See* [DE 17]. In response, Plaintiff sought to conduct jurisdictional discovery. *See* [DE 24]. Determining that jurisdictional discovery was warranted, and noting agreement by Tamborlee, the Court granted Plaintiff's request. *See* [DE 27]. After conducting jurisdictional discovery, Tamborlee renewed its motion, seeking to dismiss the instant action for want of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). *See* [DE 35].

## II. *STANDARD OF REVIEW*

In analyzing a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the court must: (1) determine whether the forum state's long arm statute provides a basis for jurisdiction; and (2) determine whether the exercise of jurisdiction comports with due process. *Abramson v. Walt Disney Co.*, 132 Fed.Appx. 273, 275 (11th Cir.2005) (citing *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir.1990)). Because the reach of Florida's long arm statute is a question of state law, the court must construe the statute as would the Florida Supreme Court. *Id.* (citing *Madara*, 916 F.2d at 1514). Moreover, the Eleventh Circuit has noted that the statute should be strictly construed. *See Oriental Imports and Exports, Inc. v. Maduro & Curiel's Bank*, 701 F.2d 889, 891 (11th Cir.1983) (internal citations omitted).

Typically, where the parties submit evidentiary materials in support of their positions, consideration of those materials would convert the motion to dismiss into one for summary judgment. *Steinberg v.*

*A Analyst Ltd.,* 2009 WL 806780, at *3 (S.D.Fla. Mar. 26, 2009) (citing Fed. R.Civ.P. 12(b)). However, where the court has permitted the parties to engage in jurisdictional discovery, consideration of evidence outside the pleadings does not have such effect: "in the context of personal jurisdiction the motion remains one to dismiss even if evidence outside the pleadings is considered." *Id.* (citing *Bracewell v. Nicholson Air Services, Inc.,* 748 F.2d 1499, 1501 n. 1 (11th Cir.1984)).

Absent an evidentiary hearing, the plaintiff bears the initial burden of presenting a prima facie case for personal jurisdiction. *Internet Solutions Corp. v. Marshall,* 557 F.3d 1293, 1295 (11th Cir. 2009). A plaintiff makes out a prima facie case if she presents sufficient evidence to withstand a motion for directed verdict. *Madara,* 916 F.2d at 1514; *Cable/Home Commc'n Corp. v. Network Prod., Inc.,* 902 F.2d 829, 855 (11th Cir.1990). The court must accept the facts alleged in the plaintiff's complaint as true, to the extent that they are not contradicted by the defendant's affidavits. *Cable/Home,* 902 F.2d at 855. Once the plaintiff pleads sufficient material facts to form a basis for *in personam* jurisdiction, the burden shifts to the defendant to challenge plaintiff's allegations by affidavits or other pleadings. *Prentice v. Prentice Colour, Inc.,* 779 F.Supp. 578, 586 (M.D.Fla.1991). If defendant sufficiently challenges plaintiff's assertions through affidavits, documents, or testimony, then the burden shifts back to plaintiff, who must affirmatively support its jurisdictional allegations and may not merely rely upon factual allegations set forth in the complaint. *Id.; Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623, 627 (11th Cir.1996). Where evidence conflicts, the court must construe all reasonable inferences in favor of plaintiff. *Cable/Home,* 902 F.2d at 855; *Madara,* 916 F.2d at 1514.

## III. DISCUSSION

### A. Facts relevant to personal jurisdiction analysis

Defendant Tamborlee is a foreign corporation, registered in and existing under the laws of Panama.[1] William Mackenzie ("Mackenzie"), a non-US citizen and a Belize resident, founded the company in 2004 with his friend and business acquaintance, Peter Norquoy ("Norquoy"), a South African national who operated shore excursions in Cozumel, Mexico, and Key West, Florida. *See* [DE 35] at ¶¶ 14, 15. In 2005, through contacts obtained by Norquoy, Mackenzie was able to procure a contract between Tamborlee and Carnival, wherein Tamborlee agreed to provide shore excursions to Carnival passengers in Belize. *See Id.* at ¶¶ 16, 18.

The initial contract between Tamborlee and Carnival, dated February 25, 2005, dictates that in the event of litigation, "[Tamborlee] consents to the personal jurisdiction over it and to the venue of the courts serving the Southern District of Florida in the event of any lawsuit to which CARNIVAL is a party and which is related to, in connection with, arising from or involving the Shore Excursion or the terms of this Agreement." [DE 35–1] at pp. 20–23, ¶ 14(c). Pursuant to the contract, Tamborlee retains exclusive control over the shore excursion. *Id.* at ¶ 5. Further, the contract classifies Tamborlee an independent contractor, and notes that nothing in the agreement shall be con-

---

1. Tamborlee operates as a holding company that owns 49% of Belize Paradise Ltd. ("Belize Paradise"). *See* [DE 35] at ¶¶ 2–5. While Tamborlee is registered as a Panamanian company, Belize Paradise is registered under the laws of Belize. *Id.*

strued as constituting an agency or joint venture relationship. *Id.* at ¶ 11.

Although Tamborlee is registered in Panama, the contract provides that it maintains a principal place of business at P.O. Box 6446, Key West, FL 33401. [DE 35–1] at p. 20. On June 16, 2005, almost four months after entering into the first shore excursion contract, Mackenzie executed an addendum modifying the contract, specifying the corporation name change to Tamborlee Management, Inc. d/b/a Belize Paradise Ltd. [DE 35–1] at p. 30. No modification to the corporate address was executed. *See id.* In December 2005, a second contract was executed setting forth the same terms present in the first, notably, the same Key West post office box and consent to personal jurisdiction clause. *See* [DE 35–1] at pp. 15–18.

Mackenzie attests that the address was placed in the agreement in error, and that Key West post office box has never been associated with Tamborlee, but rather belonged to an unrelated entity owned by or affiliated with Norquoy, with whom Carnival had existing shore excursion contracts. *See* [DE 35] at ¶¶ 18–23; Mackenzie Supp. Dec. [DE 35–1] at pp. 1–13, ¶¶ 52–55. Tamborlee points to emails sent to Carnival setting forth Tamborlee's Belize and Panama addresses, however, it does not identify in the record any correspondence to Carnival specifically stating that the Key West address in the contracts were erroneous. Although the contracts state that Tamborlee maintains a Key West address, neither Tamborlee nor Belize Paradise is licensed to do business in the State of Florida. *See* [DE 35] at ¶ 7. Tamborlee has entered into contracts with other cruise lines; no other contract contains the Key West address listed in the contract between Tamborlee and Carnival. *See* [DE 35] at ¶ 24.

Tamborlee does not directly advertise to its potential customers, but rather, its marketing is conducted entirely by the cruise lines. *See* [DE 39–2] at 79:5–24. Further, if a customer chooses to participate in a shore excursion, the customer books their reservation and purchases the ticket with the cruise line, not directly with Tamborlee. *See* [DE 39–2] at 70:15–71:4. Therefore, other than communicating with cruise line employees located in Florida, there is almost no direct contact with the State of Florida with respect to the sale of shore excursions.

Tamborlee maintains insurance through several United States and Florida-based providers, *see* [DE 39–3], and, since 2010, has been a member of the Florida Caribbean Cruise Association ("FCCA"), a non-profit trade organization based in Florida. *See* [DE 39–2] at 128.

Until 2008, Tamborlee operated solely through either Panamanian or Belizean banks. *See* [DE 35] at ¶ 29. However, to facilitate the transfer of U.S. currency between itself and contracting parties, Tamborlee opened a Citibank account. *Id.* at ¶¶ 29–31. The Citibank account, handled by a Citibank department located in Miami, Florida, was utilized for several purposes, including transmission of payments received from cruise lines, small purchases for Tamborlee, and personal withdrawals by Mackenzie. *Id.* at ¶ 32. While Tamborlee asserts that it continued to utilize its Belize bank accounts for operational purposes, *see* [DE 35] at ¶ 32, Plaintiff contends that Tamborlee made more than one hundred transfers from the Citibank account to various people and entities located throughout the United States, and, critically, in Florida. *See* [DE 39] at pp. 10–11; [DE 41–1]. Mackenzie attests that transfer of funds to accounts in Florida was primarily associated with the currency exchange. *See* [DE 35] at ¶ 30.

## B. *Legal Analysis*

 In order to determine whether a district court may exercise personal jurisdiction over a nonresident defendant, a two-part inquiry is required. *Sculptchair,* 94 F.3d at 626. First, the Court must determine whether the Florida long-arm statute provides a sufficient basis for personal jurisdiction. *Id.* After deeming jurisdiction appropriate under .Florida law, the Court must then ascertain whether "sufficient minimum contacts exist between the defendant[ ] and the forum state so as to satisfy 'traditional notions of fair play and substantial justice' under the Due Process Clause of the Fourteenth Amendment." *Id.* (internal quotation and citation omitted). The Court examines these issues in turn.

### 1. *Florida's Long Arm Statute*

 A defendant may be subject to Florida's long-arm statute in two fashions, specific jurisdiction and general jurisdiction. *See* Fla. Stat. § 48.193. Irrespective of which method applies, "Florida's long-arm statute is to be strictly construed." *Sculptchair,* 94 F.3d at 627. "Since the extent of the long-arm statute is governed by Florida law, federal courts are required to construe it as would the Florida Supreme Court." *Id.* (quoting *Cable/Home Communication v. Network Prods.,* 902 F.2d 829, 856 (11th Cir.1990)). Furthermore, "[a]bsent some indication that the Florida Supreme Court would hold otherwise, [federal courts] are bound to adhere to decisions of [Florida's] intermediate courts." *Id.* (citation omitted).

### a. *Specific jurisdiction* [2]

 First, under a theory of specific jurisdiction, the relevant portion of Flori-

da's long-arm statute provides that a court may exercise jurisdiction over a party "operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state." Fla. Stat. § 48.193(1)(a)(1). The business activity must demonstrate a general course of business for pecuniary benefit connected with the alleged tort. *See Sculptchair,* 94 F.3d at 627 (citing *Dinsmore v. Martin Blumenthal Assocs., Inc.,* 314 So.2d 561, 564 (Fla.1975)); *Zapata v. Royal Caribbean Cruises, Ltd.,* 2013 WL 1100028, *5 (S.D.Fla. Mar. 15, 2013). No nexus exists between the alleged negligence and any of Defendant Tamborlee's Florida contacts to find specific jurisdiction under this prong. *See Island Sea–Faris v. Haughey,* 13 So.3d 1076, 1078 (finding that no nexus between a negligence claim against the operator of an excursion and the sale of a ticket in Florida).

Additionally, although the Court denied Carnival's motion to dismiss Plaintiff's apparent agency theory, *see* [DE 33] at pp. 8–9, that ruling was based on Carnival's language in its Ticket Contract, which stated that "Carnival acts only as an agent for the independent tour operators supplying excursions or services." See [DE 19–1] at p. 17. However, that ruling against Carnival, based on Carnival's own language, does not bind Tamborlee for purposes of whether the exercise of personal jurisdiction over Tamborlee is appropriate. Further, Tamborlee's business activity of operating the shore excursion was not conducted in the State of Florida and, as a result, Plaintiff cannot appropriately attribute Carnival's Florida activities to Tamborlee in order to satisfy the Florida long-arm statute.

---

2. Plaintiff does not pursue a theory of specific jurisdiction under the Florida long arm statute. *See* [DE 39]. Nevertheless, the Court briefly addresses this theory for purposes of a complete personal jurisdiction analysis.

The Court also notes that, at first blush, the consent to jurisdiction clause found in the shore excursion contracts between Tamborlee and Carnival would seem to end the inquiry with respect to the Florida long-arm statute. However, Plaintiff is not a party to the shore excursion contract, and, therefore, may not be able to enforce the conferral of jurisdiction clause. *See, e.g., Lapidus v. NCL America LLC,* 2013 WL 646185, *5 (S.D.Fla. Feb. 14, 2013) (excursion entities' contractual agreement to subject themselves to law and jurisdiction of state of Florida insufficient basis to confer personal jurisdiction: "Plaintiff has neither pled that he is a party to the contract nor has he sufficiently alleged his third party beneficiary claim. Further, Plaintiffs negligence claim does not bear any relationship to the contract, as alleged, in which the Excursion Entities agreed to subject themselves to this Court's jurisdiction.")

### b. General jurisdiction

Second, pursuant to Florida's general jurisdiction, a defendant may be haled into a Florida court if it is "engaged in substantial and not isolated activity within [the] state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity." Fla. Stat. § 48.193(2). While Florida's specific jurisdiction requires the plaintiff to establish connexity between the injuries suffered and the defendant's contacts, *see infra,* Florida's general jurisdiction does not. *See Woods v. Nova Companies Belize Ltd.,* 739 So.2d 617, 620 (Fla. 4th DCA 1999) (citing *Helicopteros Nacionales de Colombia S.A. v. Hall,* 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)).

If Plaintiff relies on Fla. Stat. § 48.193(2), then Plaintiff must show that Tamborlee engaged in substantial activity in Florida. Florida courts have interpreted "substantial and not isolated activity" to mean "continuous and systematic general business contact." *Id.* Indeed, in order for a defendant to fall within Florida's general jurisdiction, a defendant's contacts "must be so extensive to be tantamount to [the] defendant being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in the forum state's courts in any litigation arising out of any transaction or occurrence taking place anywhere in the world." *Exhibit Icons, LLC v. XP Companies, LLC,* 609 F.Supp.2d 1282, 1295 (S.D.Fla. 2009).

The Court notes that in the Supreme Court's recent decision in *Daimler AG v. Bauman,* —— U.S. ——, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014), the Court held that the inquiry under the Due Process clause must focus on "whether that corporation's 'affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State.'" *Id.* at 761 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown,* —— U.S. ——, 131 S.Ct. 2846, 2851, 180 L.Ed.2d 796 (2011)). Although *Daimler* was concerned with a due process inquiry and not an analysis under Florida's long-arm statute, the Eleventh Circuit has noted that the general jurisdiction provisions of section 48.193(2) of the Florida long-arm statute are coextensive with "the limits on personal jurisdiction imposed by the Due Process Clause." *Fraser v. Smith,* 594 F.3d 842, 846 (11th Cir.2010) (*citing Woods,* 739 So.2d at 620). While this is an accurate description of the law, it should be noted that since the *Fraser* decision, the Eleventh Circuit has cautioned that "determining whether jurisdiction is appropriate under the Florida long-arm, is a separate inquiry from determining whether exercising personal jurisdiction com-

ports with the Due Process Clause." *Melgarejo v. Pycsa Panama, S.A.*, 537 Fed. Appx. 852, 859 (11th Cir.2013) (citing *Internet Solutions Corp. v. Marshall*, 39 So.3d 1201, 1207 (Fla.2010)). In fact, the Due Process Clause "imposes a more restrictive requirement than does Florida's Long–Arm Statute." *Id.* (citation omitted). Accordingly, the analyses under the Due Process Clause and the Florida long-arm statute remain distinct inquiries.

In the instant motion, Tamborlee relies heavily on *Fraser*, a case in which the Eleventh Circuit found that a foreign tour operator did not meet the requirements of Florida's long-arm statute. Organized under the laws of a foreign jurisdiction, the defendant in *Fraser* provided boat charters and recreational services to foreign visitors in the Turks and Caicos Islands. *Id.* at 844. While the defendant neither maintained offices nor employed individuals within the United States, it did target the United States for advertising purposes, purchased boats in Florida, procured liability insurance through an insurance agent in Florida, and sent representatives to attend trade shows in various U.S. cities, including in Florida. *Id.* at 845. Despite these activities, the Eleventh Circuit found that defendant's contacts were insufficient to support either general jurisdiction under § 48.193(2), or specific jurisdiction under § 48.193(1), noting that its business activities in Florida "boil[ed] down to purchases, visits, and advertising." *Id.* at 846–48.

Other courts have reached the same conclusion in similar contexts. *See Zapata v. Royal Caribbean Cruises, Ltd.*, 2013 WL 1100028 (S.D.Fla. Mar. 15, 2013) (finding no jurisdiction over Bermuda-based tour operator where cruise line sold tickets through Florida cruise company but did not have other contacts with the forum); *Ash v. Royal Caribbean Cruises, Ltd.*, 991

F.Supp.2d 1214 (S.D.Fla.2013) (holding no jurisdiction under Florida's long-arm statute where foreign tour operator did not directly sell tickets to passengers and did not maintain any offices, property, or assets in Florida); *E & H Cruises, Ltd. v. Baker*, 88 So.3d 291, 294 (Fla. 3d DCA 2012) (finding that despite maintaining membership in the FCCA, building extensive relationships with Florida-based cruise lines, obtaining insurance through a Florida broker, utilizing a Florida bank account, and making several trips to Florida, a Cayman Islands shore excursion operator was not within the purview of the Florida long-arm statute); *Island Sea–Faris, Ltd. v. Haughey*, 13 So.3d 1076 (Fla. 3d DCA 2008) (holding that foreign shore excursion operator that sold tickets through a cruise line and maintained relationships with other cruise lines was not subject to jurisdiction under Florida's long-arm statute); *see also United Shipping Co. (Nassau) Ltd. v. Witmer*, 724 So.2d 722 (Fla. 3d DCA 1999) (finding that neither prong of jurisdiction under the Florida long-arm statute was applicable to a Bahamian-based boat tour operators that sold tickets through Florida-based cruise lines).

Plaintiff relies heavily on the decision in *Meyer v. Carnival Corp.*, 938 F.Supp.2d 1251 (S.D.Fla.2013), wherein the district court found that a foreign shore excursion operator had exhibited systematic and not isolated business activity within the state to find general jurisdiction under § 48.193(2). Upon review of the relevant cases, nearly all of which found no Florida long-arm jurisdiction under similar factual circumstances, the Court is not persuaded by *Meyer*. There, the court seemingly did not consider *Fraser, Island Sea–Faris,* or *E & H* in its reasoning. Moreover, the instant case is distinguishable from *Meyer* on the facts, in that the excursion operator in *Meyer* utilized a Miami–Dade phone

number to conduct its business, listing that phone number on its website and utilizing it in outgoing electronic communications. *See* 938 F.Supp.2d at 1259. *See also Aronson v. Celebrity Cruises, Inc.,* 30 F.Supp.3d 1379, 2014 WL 3408582 (S.D.Fla. May 9, 2014) (concluding that attenuated contacts such as membership in a trade organization, attending trade shows, making purchases in the state, and conducting a few business trips to the forum, were insufficient to confer personal jurisdiction; distinguishing decision in *Meyer,* where the foreign defendant utilized a Miami–Dade phone number to conduct its business).

■ In the instant case, Plaintiff directs the Court to Tamborlee's Key West post office box address listed on the shore excursion contracts with Carnival as evidence of direct and sustained contacts with Florida. However, Tamborlee has presented evidence that the address was placed in the agreement in error, and that Key West post office box has never been associated with Tamborlee, but rather belonged to an unrelated entity owned by or affiliated with Norquoy, with whom Carnival had existing shore excursion contracts. Emails exchanged between Tamborlee and Carnival prior and subsequent to the signing of the initial contract in 2005 further indicate that Tamborlee's business addresses were in Belize and Panama. Plaintiff has not produced sufficient evidence that Tamborlee actually conducted any business from Key West. Merely because Norquoy, one of Tamborlee's founders, operated other entities within the State of Florida does not subject Tamborlee to Florida's jurisdiction. To the contrary, nearly all of the other contracts introduced show that Tamborlee's place of business and mailing address is either in Belize or Panama.[3] Even if the Court were to accept that the Key West post office box was a Tamborlee mailing address, this is insufficient support for personal jurisdiction. *See City Contract Bus Serv., Inc. v. Woody,* 515 So.2d 1354, 1357 (Fla. 1st DCA 1987) (noting that a P.O. box is not the equivalent of maintaining a business office within the state). The fact that Tamborlee has not registered to do business in Florida is further evidence that Tamborlee's "home" is not in the State of Florida.

Additionally, Tamborlee's business trips to Florida cannot constitute substantial activity in the state. *See Aronson,* 30 F.Supp.3d at 1389, 2014 WL 3408582 at *5 ("annual trips to Florida to attend meetings and trade shows do not constitute 'substantial activity' in the state sufficient to establish general personal jurisdiction"); *Pathman v. Grey Flannel Auctions, Inc.,* 741 F.Supp.2d 1318, 1323 (S.D.Fla.2010) (finding defendant's "two to three" yearly business trips to Florida insufficient for exercise of general jurisdiction). Nor does Tamborlee's membership in the FCCA support general personal jurisdiction. *See E & H Cruises,* 88 So.3d at 294; *Aronson,* 30 F.Supp.3d at 1389, 2014 WL 3408582 at *5. Finally, Tamborlee's Florida purchases, insurance, and other contacts with Florida-based cruise operators are equally inadequate to support general jurisdiction under Florida's long-arm statute. *See E & H Cruises,* 88 So.3d at 294; *Fraser,* 594 F.3d at 845–47; *Aronson,* 30 F.Supp.3d at 1389, 2014 WL 3408582 at *5. For the aforementioned reasons, the Court lacks personal jurisdiction over Defendant Tamborlee under Florida's general jurisdiction provision, § 48.193(2).

**3.** Plaintiff also references a UCC filing from February 2005 that lists an entirely different Key West address, 201 Front Street. *See* ECF No. [98–8]. However, this same filing also lists a Belize address for Tamborlee and is therefore ambiguous and unpersuasive. *Id.*

### 2. Due Process, Minimum Contacts

As the Court finds that jurisdiction is not appropriate under either § 48.193(1)(a) or (2) of the Florida long-arm statute, a lengthy due process inquiry is not necessary. The second prong of the inquiry focuses on whether "sufficient minimum contacts exist between the defendants and the forum state so as to satisfy 'traditional notions of fair play and substantial justice.'" *Sculptchair*, 94 F.3d at 626; *see also International Shoe v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). However, as noted, the Due Process Clause "imposes a more restrictive requirement than does Florida's Long–Arm Statute." *Melgarejo*, 537 Fed.Appx. at 859 (citation omitted). Consequently, a finding that jurisdiction is not available under Florida's general jurisdiction necessitates the conclusion that jurisdiction is not appropriate under the Due Process clause.

### IV. CONCLUSION

For the foregoing reasons, Defendant Tamborlee's contact with Florida is insufficient to bring it within the purview of Florida's long-arm statute.

Accordingly, it is **ORDERED and ADJUDGED** as follows:

1. Defendant Tamborlee's Motion [DE 35] is **GRANTED**.

2. This action is hereby **DISMISSED** as to Defendant Tamborlee for lack of personal jurisdiction.

3. Plaintiff's claim against Defendant Carnival (Count I) shall proceed.