S. William ARONSON, Plaintiff,

v.

CELEBRITY CRUISES, INC., and Wrave Ltd., d/b/a Whacky Rollers, Defendants.

Case No. 12–CV–20129.

United States District Court, S.D. Florida.

Signed May 8, 2014.

Entered May 9, 2014.

Carlos Felipe Llinas Negret, Law Offices of Lipcon, Margulies & Alsina P.A., Jacqueline Garcell, Jason Robert Margulies, Lipcon, Margulies, Alsina, Winkleman, P.A., Miami, FL, for Plaintiff.

Darren Wayne Friedman, Elisha Sullivan, Jeffrey Eric Foreman, Brian Hugo McGuire, Foreman Friedman, PA, Bianca Zuluaga, Diaz Briscoe Medina, PA, Miami, FL, for Defendants.

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS

KATHLEEN M. WILLIAMS, District Judge.

THIS MATTER is before the Court on Defendant Celebrity Cruises, Inc.'s Motion to Dismiss the Complaint [D.E. 9], and Wrave Ltd.'s Renewed Motion to Dismiss [D.E. 65]. For the reasons stated below, Wrave Ltd.'s Renewed Motion to Dismiss [D.E. 65] is GRANTED and Celebrity Cruises, Inc.'s Motion to Dismiss [D.E. 9] is GRANTED IN PART AND DENIED IN PART.

### I. Background

This case arises from injuries Plaintiff, an "elderly gentleman," sustained in a fall from a rope bridge in Roseau, Dominica, on or about March 17, 2011, while on a "shore excursion" arranged for passengers traveling on the *Celebrity Equinox*, a vessel owned and operated by Defendant Celebrity Cruises, Inc. [D.E. 1]. The Complaint alleges that Defendant Wrave Ltd., a foreign corporation, owned and/or operated the "High Hopes! High Ropes!" tour on which Plaintiff was injured. *Id.* at ¶ 7. The Complaint further alleges that trips with Wrave were organized by Celebrity for its cruise-ship passengers pursuant to a contractual agreement between Wrave and Celebrity. *Id.* at ¶ 8.

On January 11, 2012, Plaintiff filed this action against Defendants. *Id.* The Complaint contains single counts of negligence against both Celebrity and Wrave, although each count alleges more than 25 different theories of liability, respectively. *Id.* at ¶¶ 19–33. The Complaint also includes a claim for apparent agency or agency by estoppel against Celebrity, a joint venture claim against both Celebrity and Wrave, and a third-party beneficiary claim. *Id.* at ¶¶ 34–51.

In its Motion to Dismiss, Celebrity argues that Plaintiff has failed to state a claim upon which relief can be granted [D.E. 9]. Wrave argues that Plaintiff has failed to state a claim and that the Court lacks personal jurisdiction over the foreign corporation [D.E. 65]. Plaintiff has filed responses in opposition to the motions [D.E. 20; D.E. 70; D.E. 71]. The Court heard oral arguments on these motions on April 2, 2014 [D.E. 83].

## II. Analysis

### A. Wrave, Ltd.'s Motion to Dismiss for Lack of Personal Jurisdiction

A federal court in Florida may exercise personal jurisdiction over a non-resident defendant to the extent that a Florida court may, as long as the exercise of jurisdiction is consistent with federal due process requirements. *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008). The Court must therefore determine whether a Florida court could exercise jurisdiction over Wrave, Ltd. under Florida's long-arm statute. *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir.2010). The reach of the long-arm statute is a question of Florida law, which a federal court must construe as would the Florida Supreme Court. *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1271 (11th Cir.2002) (internal citations omitted). In the absence of Florida Supreme Court precedent, federal courts must adhere to decisions of Florida's intermediate courts. *Id.* (internal citations omitted).

Wrave argues that it is not subject to either specific or general jurisdiction under the long-arm statute, Fla. Stat. § 48.193, and that the exercise of the Court's jurisdiction would violate the Due Process Clause [D.E. 65 at 2–19]. Plaintiff argues that Wrave's activities in Florida suffice to confer both specific and general jurisdiction under the long-arm statute, and that the exercise of jurisdiction would satisfy due process [D.E. 71].

It is Plaintiff's burden to establish a *prima facie* case of personal jurisdiction over a foreign defendant. *Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir.2006). When a defendant has submitted affidavits challenging a court's jurisdiction, the burden traditionally shifts back to the plaintiff to produce evidence support-ing jurisdiction, unless the defense affidavits contain only conclusory assertions. *Meier*, 288 F.3d at 1269. Where the plaintiff and defendant have submitted conflicting evidence, the court must construe all reasonable inferences in favor of the plaintiff. *Id.*

In support of its motions, Wrave has submitted a declaration from its managing director, Phillip Rolle, who asserts that Wrave is not incorporated in Florida, that the company has no business operations in Florida, and that Wrave has no property or employees in Florida [D.E. 16–1]. In response, Plaintiff has submitted a series of exhibits demonstrating Wrave's contacts with Florida, mainly through its business ties with Florida-based cruise lines [D.E. 72].

### 1. Specific Jurisdiction

Plaintiff argues that Wrave is subject to this Court's jurisdiction pursuant to Fla. Stat. § 48.193(1)(a)(1), which confers jurisdiction over an out-of-state defendant for claims arising against a defendant who is "operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state." Wrave argues that Plaintiff has failed to plead any jurisdictional facts supporting specific jurisdiction, and that Plaintiff has failed to rebut the declaration of Phillip Rolle, who asserts that Wrave has no business operations in Florida [D.E. 65 at 3–5].

In response to Wrave's motion, Plaintiff has offered a cursory, conclusory argument that Wrave's conduct in Florida meets the criteria for specific jurisdiction [D.E. 71 at 3], but Plaintiff has failed to allege any facts showing that Wrave is a business operating in this state, or that Wrave has an office or agency in Florida as required by § 48.193(1)(a)(1). Moreover, Plaintiff does not rebut or otherwise challenge Phillip Rolle's declaration assert-

ing that Wrave has no employees, offices or property in Florida [D.E. 16–1]. For these reasons, the Court finds that Plaintiff has failed to produce evidence supporting specific jurisdiction over Wrave under the long-arm statute. *See Meier,* 288 F.3d at 1269.

### 2. General Jurisdiction

A Florida court may also exercise jurisdiction over a defendant "who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise ... whether or not the claim arises from that activity." Fla. Stat. § 48.193(2). The reach of this provision is coextensive with the limits on personal jurisdiction imposed by the Due Process Clause. *See Fraser,* 594 F.3d at 846. Therefore, in examining general jurisdiction under the long-arm statute, the Court must determine whether the exercise of jurisdiction over a defendant is constitutionally permissible—that is, whether defendant has "established certain minimum contacts with the forum such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (internal citations omitted).

To establish whether a foreign defendant was engaged in "substantial and not isolated activities" in Florida, the defendant's activities must be "considered collectively and show a general course of business activity in the state for pecuniary benefit." *Stubbs,* 447 F.3d at 1361 (internal citations omitted). However, because general personal jurisdiction is based on contacts unrelated to the cause of action being litigated, the due process requirements for general jurisdiction must be assessed under a "stricter standard" than those for specific jurisdiction. *Consolidated Dev. Corp. v. Sherritt, Inc.,* 216 F.3d 1286, 1292 (11th Cir.2000). Under this more exacting standard, a defendant's contacts with the forum state "must be so extensive to be tantamount to [a defendant] being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in [the forum state's courts] in any litigation arising out of any transaction or occurrence taking place anywhere in the world." *Exhibit Icons, LLC v. XP Cos., LLC,* 609 F.Supp.2d 1282, 1295 (S.D.Fla. 2009) (internal citations omitted). In other words, a defendant's activities must be "so 'continuous and systematic' as to render [the defendant] essentially **at home** in the forum state." *Daimler AG v. Bauman,* — U.S. —, 134 S.Ct. 746, 761, 187 L.Ed.2d 624 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown,* — U.S. —, 131 S.Ct. 2846, 2851, 180 L.Ed.2d 796 (2011)) (emphasis added).

Plaintiff does not dispute that Wrave has no office or employees or property in Florida. Instead, Plaintiff argues that Wrave has engaged in a series of business-related contacts with Florida-based cruise lines over the years such that it is subject to the general jurisdiction of this Court [D.E. 71 at 5–20]. Specifically, Plaintiff argues that: a majority of Wrave's touring business is derived from arrangements with Florida-based cruise line operators, which market and advertise Wrave's tours on their ships and websites; Wrave is paid by the cruise lines through wire transfers from Florida banks; Wrave has submitted bids and tour proposals to these Florida-based cruise lines; Wrave's co-owner travels to Miami annually to attend a trade conference and meet with the cruise line executives; and Wrave is a member of the Florida Caribbean Cruise Association ("FCCA"), based in Pembroke Pines, Florida. *Id.* Plaintiff further argues that Wrave is susceptible to general jurisdiction because the company has purchased some parts, supplies and insurance

in Florida, and that Wrave agreed to personal jurisdiction in Florida in its contracts with Florida-based cruise lines. *Id.*

Wrave argues that these Florida-related activities are not sufficient to confer jurisdiction under the long-arm statute or the Due Process Clause [D.E. 65 at 13–19; D.E. 75 at 4–9].

■ Determining whether a foreign defendant's contacts with a forum state are significant and systematic enough to justify general jurisdiction over that defendant is a fact-specific inquiry that has led to some seemingly inconsistent results in this district and in Florida courts when applied to claims brought against foreign tour operators working with Florida-based cruise line operators. *Compare Meyer v. Carnival Corp.*, 938 F.Supp.2d 1251, 1259–60 (S.D.Fla.2013) (holding that a Saint Lucia tour operator's ties to a Florida-based cruise ship company were sufficient to confer general jurisdiction over the tour operator) *and Pownall v. Cunard Line Ltd. Co.*, 06–CV–22836–CMA [D.E. 120] (finding jurisdiction over a tour operator in the British Virgin Islands based on its relationship with cruise companies) *with Zapata v. Royal Caribbean Cruises, Ltd.*, No. 12–21897–CIV, 2013 WL 1100028, at *4–5 (S.D.Fla. March 15, 2013) (declining to confer jurisdiction over a Bermuda-based tour operator that sold bookings through Florida-based cruise company), *Ash v. Royal Caribbean Cruises, Ltd.*, No. 13–20619–CIV, 991 F.Supp.2d 1214, 1218, 2013 WL 6970900, at*3 (S.D.Fla. Dec. 18, 2013) (finding no jurisdiction over St. Maarten tour operator where tour tickets were sold by cruise line) *and E & H Cruises, Ltd. v. Baker*, 88 So.3d 291, 294 (Fla.Dist.Ct.App. 2012) (finding a Cayman Islands tour company's ties to Florida insufficient to confer general jurisdiction). The analysis is further complicated by the Supreme Court's recent rulings in *Daimler* and *Goodyear*, which appear to demand a heightened standard for conferring general jurisdiction over foreign defendants. After examining the jurisdictional facts in light of *Daimler* and the precedent of Florida's appellate courts, the Court finds that Wrave's contacts with Florida are not sufficiently substantial or continuous to support a finding of personal jurisdiction over this foreign defendant.

■ A party may be subject to general jurisdiction based on both direct and indirect contact with the forum state. *See Stubbs*, 447 F.3d at 1361. Generally, a foreign defendant is not subject to the jurisdiction of the forum state based on the in-state conduct of a subsidiary; however, a company's conduct in the forum state may be imputed to a related foreign defendant "if the subsidiary is merely an agent through which the parent company conducts business in a particular jurisdiction or its separate corporate status is formal only and without any semblance of individual identity." *Id.* (quoting *Meier*, 288 F.3d at 1272). The contacts of the forum-state company may also be attributed to the foreign defendant in "other principal-agent relationships, when the resident corporation acts on behalf of it foreign affiliates." [1] *Id.* (citing *Meier*, 288 F.3d at 1273).

---

1. Although the Eleventh Circuit in *Meier* found that "agency is not ... limited to a parent-subsidiary relationship" for purposes of attributing a purported agent's contacts in the forum state to a foreign defendant, this may have been undermined by the Supreme Court's *Daimler* decision. The Supreme Court criticized the Ninth Circuit for adopting a definition of agency that would impute a subsidiary's conduct to the foreign parent as long as the subsidiary "performs services that are sufficiently important to the foreign corporation," finding that such an approach would "subject foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate" and would therefore

Wrave's direct contacts with Florida are few. Wrave's co-owner and marketing director, Amber Rolle, a resident and citizen of Dominica, testified that she travels to Miami once a year to attend the annual Seatrade cruise industry conference and to meet with executives from the cruise ship companies [D.E. 72–4 at 3–5]. At these meetings, Wrave's principals discuss both potential new business and issues relating to the existing business operations.[2] *Id.* at 4–6. Wrave submits bids to Miami-based cruise ship operators annually via e-mail to solicit business, it has bought equipment in Florida, and it has purchased insurance through a Miami-based insurance broker. *Id.* at 4–8; D.E. 72–8; D.E. 72–24 at 7–9. Wrave is also a member of the Florida Caribbean Cruise Association ("FCCA"), a Florida-based trade organization through which the company maintains relationships with cruise ship operators in Florida [D.E. 72–7 at 3].

Wrave's more significant contacts with the state have been made indirectly, through its relationships with Celebrity and other cruise operators. Wrave's primary business is providing tours of Dominica to cruise ship passengers traveling to Dominica [D.E. 72–4 at 3]. Wrave's trips are sold to ship passengers by the cruise ship operators themselves through "shore excursion" booking offices on board the ships, or through an interactive program accessible through passengers' stateroom televisions [D.E. 72–10 at 34–36]. The cruise companies are also responsible for promoting and marketing Wrave's tours [D.E. 72–11 at 22]. Celebrity, for example, promotes Wrave's excursions through videos broadcast on stateroom televisions [D.E. 72–10 at 34]. Celebrity and other Florida-based cruise companies also advertise Wrave's excursions on their websites, which are hosted in Florida [D.E. 72–17; D.E. 72–18]. Under Wrave's contract with Celebrity, Wrave charges the cruise company a set price per passenger, but Celebrity sets its own price for charging ship passengers for the tours [D.E. 72–11 at 19]. Wrave is then paid by Celebrity through wire transfers from a Florida account to Wrave's account in Dominica [D.E. 72–15]. Amber Rolle testified that 99 percent of Wrave's revenues are derived from cruise line passengers, with a "majority" of the business coming from cruise operators based in Florida [D.E. 72–4 at 7].

In its contracts with Florida tour operators, Wrave has consented to the jurisdiction of the Florida courts [D.E. 72–11 at 20; D.E. 72–12 at 7, 26]. And as part of their business arrangement, the Florida cruise operators also require Wrave to purchase insurance policies covering both

"sweep beyond even the sprawling view of general jurisdiction we rejected in *Goodyear*." *See Daimler*, 134 S.Ct. at 759–60 (comparing the Ninth Circuit's "importance" test with other circuits that allow a subsidiary's jurisdictional contacts to be imputed to the parent company "only when the former is so dominated by the latter as to be its alter ego"). This raises the question of whether *Meier* is correct in allowing a court to impute the contacts of an in-state agent to a foreign corporation in the absence of a showing of a parent-subsidiary relationship or some other evidence of the foreign defendant's control over the in-state agent. *See Sonera Holding*

*B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225–26 (2d Cir.2014).

2. In oral arguments and in his Response to the motion, Plaintiff emphasizes deposition testimony in which Amber Rolle answered in the affirmative when asked if her company's continued business with the cruise lines is "a result" of her annual meetings with cruise executives in Miami [D.E. 71 at 10; D.E. 72–4 at 5]. Elsewhere in the deposition, Rolle described the annual visits in Miami as a standard practice for tour operators working with the cruise industry, but not a requirement imposed by cruise operators [D.E. 72–4 at 6].

Wrave and the cruise operators, which Wrave purchased through a Florida-based broker [D.E. 72–4 at 30–33].

After examining Wrave's direct and indirect contacts with Florida, the Court cannot find that Wrave's contacts with this state are so continuous and systematic so as to render Wrave "at home" in Florida. In discussing Wrave's direct contacts with Florida, Plaintiff has placed great emphasis on Amber Rolle's annual trips to Miami to attend the Seatrade show and meet with cruise line operators [D.E. 71 at 9–11]. However, annual trips to Florida to attend meetings and trade shows do not constitute "substantial activity" in the state sufficient to establish general personal jurisdiction. *See Camp Illahee Invs., Inc. v. Blackman*, 870 So.2d 80, 85 (Fla.Dist.Ct.App.2003); *Pathman v. Grey Flannel Auctions, Inc.*, 741 F.Supp.2d 1318, 1323 (S.D.Fla.2010) (defendant's "two to three" business trips to Florida every year were insufficient to establish general jurisdiction); *Bluewater Trading, LLC v. Fountaine Pajot, S.A.*, No. 07–61284–CIV, 2008 WL 2705432, at *4 (S.D.Fla. July 9, 2008) (defendant's annual attendance at the Miami International Boat Show did not support a finding of "systematic and continuous" contacts with Florida). Plaintiff has also highlighted Wrave's membership in the Florida Caribbean Cruise Association [D.E. 71 at 11–12]. However, this too has been found insufficient to establish general personal jurisdiction. *E & H Cruises*, 88 So.3d at 294; *but see Meyer*, 938 F.Supp.2d at 1260–61. And the Court is not persuaded that Wrave's periodic emails to Florida cruise operators to submit bids for contracts suffice to establish general jurisdiction, given that, even under the more relaxed standards for specific jurisdiction, a defendant's "foot-fall" in Florida to negotiate a contract to be performed outside the state is not enough to establish personal jurisdiction over the defendant. *See PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 811–12 (11th Cir.2010) (citing *Sea Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A.*, 792 F.2d 989, 991–94 (11th Cir.1986)); *see also Bluewater Trading*, 2008 WL 2705432 at *4 (foreign defendant's ten weekly e-mails with a Florida corporation were insufficient to establish general jurisdiction); *Fraser*, 594 F.3d at 847 ("A defendant does not confer general jurisdiction on the courts of Florida by occasionally soliciting business there"). Nor has Wrave conferred jurisdiction by making intermittent equipment purchases in Florida, *see Fraser*, 594 F.3d at 846–47 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (holding that "purchases and related trips" by themselves do not support a finding of general jurisdiction)), or by purchasing insurance through a Florida broker. *See E & H Cruises*, 88 So.3d at 294; *Fraser*, 594 F.3d at 845.

Given the paucity of direct contacts between Wrave and Florida, Plaintiff's argument for jurisdiction necessarily depends on the company's indirect contacts with Florida through its relationships with Celebrity and other cruise operators. But these indirect contacts are also lacking. For example, the fact that Florida cruise lines sold tickets to Wrave's tours is insufficient to confer general jurisdiction under the long-arm statute. *See United Shipping Co. (Nassau) Ltd. v. Witmer*, 724 So.2d 722, 722–23 (Fla.Dist.Ct. App.1999); *Island Sea–Faris, Ltd. v. Haughey*, 13 So.3d 1076, 1077–78 (Fla.Dist.Ct. App.2008); *Lapidus v. NCL America LLC*, No. 12–21183–CIV, 2013 WL 646185, at *7 (S.D.Fla. Feb. 14, 2013); *Zapata*, 2013 WL 1100028, at *4–5; *Ash*, 991 F.Supp.2d at 1217–18, 2013 WL 6970900, at *3. Payments to Wrave from Celebrity

through wire transfers from Florida are also insufficient to establish general jurisdiction. *See Island Sea–Faris,* 13 So.3d at 1077–78. Similarly, internet advertising of Wrave's business through the cruise operators' websites does not qualify as substantial activity under the long-arm statute.[3] *See Fraser,* 594 F.3d at 847.

Considered collectively, Wrave's direct and indirect contacts with Florida do not rise to the level of "substantial and not isolated activities" within the meaning of Florida's long-arm statute. The Court cannot conclude, as Plaintiff argues, that Wrave's contacts with Florida are so substantial and extensive to establish Wrave's constructive presence in the state. *See Exhibit Icons,* 609 F.Supp.2d at 1295.

In support of his argument, Plaintiff relies primarily on the ruling in *Meyer.* While the facts of *Meyer* are similar to those in this case, there is a notable difference: in *Meyer,* the plaintiff presented evidence that the foreign defendant used a Miami–Dade County phone number for its business, indicating that the defendant had some sustained and direct contact with the state. *See Meyer,* 938 F.Supp.2d at 1259. Plaintiff in this case has presented no equivalent evidence of similarly direct and sustained contacts between Wrave and Florida.[4] Perhaps of greater significance, *Meyer* was decided before the Supreme Court's *Daimler* decision. In *Daimler,* the Supreme Court found that the California courts did not have general personal jurisdiction over a foreign car manufacturer based on the California contacts of the manufacturer's United States subsidiary. *Daimler,* 134 S.Ct. at 760–61. The Court held that, to satisfy the Due Process Clause, general jurisdiction must be based on more than a foreign defendant's "substantial, continuous and systematic course of business" in the forum state. *Id.* at 761. Instead, general jurisdiction may only be predicated on contacts "so continuous and systematic as to render [the defendant] essentially at home in the forum state."

**3.** Plaintiff also notes that Wrave agreed to confer personal jurisdiction in Florida in its contracts with Florida cruise lines [D.E. 71 at 15–18]. However, a clause conferring personal jurisdiction may not be enforced unless independent grounds for personal jurisdiction exist under Florida's long-arm statute. *Alexander Proudfoot Co. World Headquarters v. Thayer,* 877 F.2d 912, 918 (11th Cir.1989) (citing *McRae v. J.D./M.D., Inc.,* 511 So.2d 540, 542 (Fla.1987)). The existence of a clause conferring personal jurisdiction is not a factor when considering a defendant's contacts with a forum state for purposes of determining whether general personal jurisdiction exists. *See Rexam Airspray, Inc. v. Arminak,* 471 F.Supp.2d 1292, 1299 (S.D.Fla.2007) (examining only a defendant's contacts with the forum state where defendant's contract with the Florida-based plaintiff included a forum selection clause).

**4.** Relying on *Meier* and *Stubbs,* the court in *Meyer* attributed a cruise line's activity in Florida to the foreign shore excursion company to establish sufficient contacts with the state to confer general personal jurisdiction. *Meyer,* 938 F.Supp.2d at 1258–59. However, other courts of this district have declined to extend the rationale of *Meier* and *Stubbs*— both of which attributed the conduct of Florida-based subsidiaries to foreign parent corporations—to shore excursion operators in cases such as this one, in which the subsidiary (Wrave) is the foreign defendant and the parent (Celebrity) is the domestic corporation whose conduct the plaintiff seeks to impute to the foreign defendant. *See Estate of Fraser v. Smith,* No. 04–22191–CIV, 2007 WL 5007084, at *9 (S.D.Fla. Nov. 13, 2007) (finding that *Meier* and *Stubbs* did not apply to a claim against a foreign shore excursion operator because "[b]oth cases involved foreign corporations which owned Florida subsidiaries which acted as mere agents or instrumentalities of the parents to conduct business in Florida"); *Lapidus,* 2013 WL 646185 at *5. However, even following *Meyer's* approach and attributing Celebrity's conduct to Wrave, Wrave's cumulative contacts with the state are insufficient to establish general jurisdiction.

*Id.* (internal citations omitted). The Supreme Court pointed to a corporation's place of incorporation and its principal place of business as the "paradigm all-purpose forums" amenable to general jurisdiction over a foreign corporate defendant. Based on this formulation, the Supreme Court found that California did not have personal jurisdiction over Daimler—even though Daimler's U.S. subsidiary had several facilities and a regional headquarters in California. *Id.* at 752. Given the extent of the California contacts deemed insufficient to establish general jurisdiction in *Daimler*, it is difficult to see how this Court could exercise general jurisdiction over Wrave based on its more attenuated contacts with Florida.

Indeed, Justice Sotomayor's concurring opinion in *Daimler* all but predicted the problem now facing this Court. Justice Sotomayor specifically found that the majority's stricter approach to personal jurisdiction casts doubt on the continued viability of *Meier*, in which the Eleventh Circuit found that a Florida court could exercise jurisdiction over several foreign defendants—corporations affiliated with a Bahamas resort—based on the conduct of their Florida-based subsidiaries, which coordinated reservations and performed other services for the resort. *Id.* at 773 (Sotomayor, J., concurring in judgment); *Meier*, 288 F.3d at 1269–74. With *Meier* and its progeny in doubt, this Court is not inclined to confer general jurisdiction over Wrave, Ltd., particularly where, as here,

Wrave's contacts with Florida are more attenuated than the contacts deemed inadequate in *Daimler*. Moreover, since *Daimler* was decided, other courts have declined to confer jurisdiction over defendants whose contacts with the forum state equaled or exceeded those presented in this case.[5] *See Air Tropiques, Sprl v. N. & W. Ins. Co. Ltd.*, No. H–13–1438, 2014 WL 1323046, at *8–11 (S.D.Tex. March 31, 2014) (declining to extend jurisdiction over a foreign defendant with an office in the forum state, and noting that, before *Daimler*, the defendant "might have been subject to general jurisdiction" under *Meier and Stubbs*); *Lexion Medical, LLC v. SurgiQuest, Inc.*, 8 F.Supp.3d 1122, 1127–28, No. 13–2453 (RHK/FLN), 2014 WL 1260761, at *3–4 (D.Minn. March 26, 2014) (finding that a defendant's "ongoing, multiyear relationship" with a hospital in the forum state did not render defendant "at home" in the forum state). For the reasons stated above, Defendant Wrave Ltd.'s renewed motion to dismiss for lack of personal jurisdiction [D.E. 65] is GRANTED. The claims against Wrave Ltd. are hereby DISMISSED pursuant to Fed.R.Civ.P. 12(b)(2).[6]

## B. Celebrity's Motion to Dismiss for Failure to State a Claim

Defendant Celebrity Cruises, Inc., has also filed a motion to dismiss for failure to state a claim for which relief can be granted under Rule 12(b)(6) [D.E. 9]. Plaintiff

---

**5.** In *Barriere v. Cap Juluca,* the court found that it could exercise jurisdiction over an Anguilla corporation based on the corporation's Florida contacts, concluding that *Daimler* did not mandate "the complete casting off of the . . . logic from *Stubbs* and *Meier.*" *Barriere v. Cap Juluca,* No. 12–23510–CIV, 2014 WL 652831, at *9 (S.D.Fla. Feb. 19, 2014). However, *Barriere* is distinguishable from this case for two reasons: the foreign defendant in *Barriere* maintained a sales office in Florida,

and the defendant failed to provide any affidavits or other documents in support of its argument against jurisdiction.

**6.** Because Plaintiff's claims against Wrave Ltd. are dismissed for lack of personal jurisdiction, Wrave's motion to dismiss for failure to state a claim under Rule 12(b)(6) [D.E. 65 at 19–27] is denied as moot.

has filed a response in opposition to the motion [D.E. 20].

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The Court's consideration is limited to the allegations in the complaint. *See GSW, Inc. v. Long Cnty.,* 999 F.2d 1508, 1510 (11th Cir.1993). All factual allegations are accepted as true and all reasonable inferences are drawn in the plaintiff's favor. *See Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention,* 623 F.3d 1371, 1379 (11th Cir. 2010); *see also Roberts v. Fla. Power & Light Co.,* 146 F.3d 1305, 1307 (11th Cir. 1998). Although a plaintiff need not provide "detailed factual allegations," a plaintiff's complaint must provide "more than labels and conclusions." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (internal citations and quotations omitted). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* Rule 12(b)(6) does not allow dismissal of a complaint because the court anticipates "actual proof of those facts is improbable," but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Watts v. Fla. Int'l Univ.,* 495 F.3d 1289 (11th Cir.2007)(quoting· *Twombly,* 550 U.S. at 545, 127 S.Ct. 1955).

### 1. Plaintiff's negligence claim against Celebrity

To state a negligence claim, a plaintiff must allege that (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiffs injury; and (4) the plaintiff suffered actual harm. *Chaparro v. Carnival Corp.,* 693 F.Supp 1333, 1336 (11th Cir.2012). In a claim based on an alleged tort occurring at an offshore location during the course of a cruise, federal maritime law applies, just as it would for torts occurring on ships sailing in navigable waters. *See Smolnikar v. Royal Caribbean Cruises Ltd.,* 787 F.Supp.2d 1308, 1315 (S.D.Fla.2011) (citing *Doe v. Celebrity Cruises, Inc.,* 394 F.3d 891, 901 (11th Cir.2004)). Generally, under maritime law a ship owner "owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case." *Keefe v. Bahama Cruise Line, Inc.,* 867 F.2d 1318, 1321 (11th Cir.1989) (quoting *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 632, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959)). This standard of negligence "requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition, at least where....the menace is one commonly encountered on land and not clearly linked to nautical adventure." *Keefe,* 867 F.2d at 1322. Because cruise ship operators are common carriers with a "continuing obligation of care for their passengers," *see Carlisle v. Ulysses Line Ltd., S.A.,* 475 So.2d 248, 251 (Fla.Dist.Ct.App. 1985), their duty of care includes a duty to warn passengers of the "known dangers" which exist "beyond the point of debarkation in places where passengers are invited or reasonably expected to visit." *Chaparro,* 693 F.3d at 1336; *see also Smolnikar,* 787 F.Supp.2d at 1322–23. However, this duty "encompasses only 'those dangers which are not apparent and obvious to the' passenger.'" *Smolnikar,* 787 F.Supp.2d at 1323 (quoting *Isbell v. Carnival Corp.,* 462 F.Supp.2d 1232, 1237 (S.D.Fla.2006)). And this duty to warn extends only to *specific,* known dangers particular to the places where passengers are invited or

reasonably expected to visit, not to general hazards.[7] *See Joseph v. Carnival Corp.,* No. 11–20221–CIV, 2011 WL 302255, at *3–4 (S.D.Fla. July 22, 2011) (dismissing a negligence claim based on plaintiff's failure to warn passengers of the inherent dangers of parasailing and of recent parasailing deaths in Cozumel); *Koens v. Royal Caribbean Cruises, Ltd.,* 774 F.Supp.2d 1215, 1219–20 (S.D.Fla.2011) (holding that a cruise ship operator had no duty to warn passengers of the frequency of crimes against tourists in Nassau); *but see Chaparro,* 693 F.3d at 1336–37 (allegations that a defendant cruise ship operator knew of the specific danger of gang violence at a specific beach area sufficed to support a failure to warn claim).

 In his negligence claim, Plaintiff offers (in varying degrees of detail) some 27 alleged breaches of duty "all of which caused the Plaintiff to be injured when he was required to navigate an elevated rope bridge, without adequate assistance, causing him to fall and suffer injury" [D.E. 1 ¶¶ 19–25]. Included among these are various iterations of the failure to warn: specifically, the Complaint alleges that Celebrity was negligent for "fail[ing] to warn Plaintiff of the dangers with respect to going on the excursion," *id.* at ¶ 22(c); "failing to adequately describe the subject excursion to the Plaintiff," ¶ 22(s); "failing to warn the Plaintiff of the dangers posed by the subject shore excursion to elderly persons," ¶ 22(v); "failing to warn the Plaintiff of the dangers posed by the subject shore excursion to him," ¶ 22(w); and "failing to adequately described the level of activity required in the subject shore excursion so as to enable the Plaintiff to evaluate the subject activities in light of his age and level of ability," ¶ 22(y). The Complaint also alleges that Celebrity "negligently failed to determine the hazards that the excursion posed to Plaintiff, failed to eliminate the hazard, failed to modify the hazard and failed to properly warn Plaintiff of the hazard." *Id.* at ¶ 24. The Complaint further alleges that "Celebrity knew of the foregoing conditions causing Plaintiff's accident and did not correct them, or the conditions existed for a sufficient length of time so that Celebrity in the exercise of reasonable care under the circumstances should have learned of them and corrected them." *Id.* at ¶ 25.

Celebrity argues that Plaintiff's negligence claim is defective in several respects. Celebrity argues that Plaintiff has offered only "boilerplate" and "conclusory" allegations without pleading sufficient facts to support the claim that Celebrity had knowledge of a specific hazardous condition [D.E. 9 at 5; D.E. 26 at 2–6]. Celebrity also argues that Plaintiff improperly seeks to expand the scope of its duties to passengers in basing its negligence claim on conduct beyond Celebrity's duty to warn [D.E. 9 at 5–6]. Plaintiff argues that he has pleaded sufficient factual allegations to support his claim and that Celebrity is seeking to narrow the scope of its duty of reasonable care to passengers [D.E. 20 at 3–14].

After reviewing the Complaint and the parties' arguments, the Court finds that Plaintiff's negligence claim based on Celebrity's duty to warn is flawed in two respects. First, Plaintiff has not identified with sufficient specificity the "hazard" or

---

7. Recently, in *Burdeaux v. Royal Caribbean Cruises, Ltd.,* 562 Fed.Appx. 932 (11th Cir. 2014), the Eleventh Circuit was asked to determine whether the scope of a cruise operator's duty to warn of onshore dangers is limited to "known specific dangers in specific places." *Id.* at 935–36, at *2–3. However, the circuit court declined to address this issue because the Plaintiff had essentially waived its objection to this definition before the trial court. *Id.* at 935–36, at *3.

"danger" that Celebrity was supposed to warn Plaintiff about in order to satisfy its duty. Celebrity had no duty to warn Plaintiff of the general danger posed by a narrow, elevated rope bridge, any more than it would have had a duty to warn a passenger about the perils of parasailing. *See Joseph,* 2011 WL 3022555 at *3–4. The Complaint does not contain allegations of any danger specific to the particular shore excursion in which Plaintiff was injured, as required in order to trigger Celebrity's duty to warn. *See McLaren v. Celebrity Cruises, Inc.,* No. 11–23924–CIV, 2012 WL 1792632, at *8–9 (S.D.Fla. May 16, 2012) (holding that plaintiff stated a viable negligence claim based on a defendant cruise line's "knowledge of a dangerous condition specific to both the excursion involved and the place of the accident"). Plaintiff's Complaint merely alleges that Celebrity failed to warn of the dangers posed by the shore excursion, without articulating what those dangers were. The Court finds that this is inadequate to state a negligence claim based on Celebrity's duty to warn.

In addition, Plaintiff has failed to adequately plead that Celebrity had actual or constructive knowledge of the alleged hazards of the excursion. *See Keefe,* 867 F.2d at 1322. The Complaint contains only a catch-all allegation that Celebrity "knew of the foregoing conditions causing Plaintiff's accident and did not correct them, or the conditions existed for a sufficient length of time so that Celebrity in the exercise of reasonable care under the circumstances should have learned of them and corrected them" [D.E. 1 at ¶ 25] (emphasis added). However, the Complaint contains no factual allegations to support the inference that Celebrity was on actual or constructive notice of any specific hazards relating to the shore excursion. There are no allegations of prior injuries on the "High Hopes! High Ropes!" excursion, for example, or of any safety concerns or management problems that would have put Celebrity on notice of a dangerous condition triggering a duty to warn passengers of the risk. *See Gayou v. Celebrity Cruises, Inc.,* No. 11–23359–CIV, 2012 WL 2049431, at *5 (S.D.Fla. June 5, 2012); *Gibson v. NCL (Bahamas) Ltd.,* No. 11–24343–CIV, 2012 WL 1952667, at *5 (S.D.Fla. May 30, 2012); *Polanco v. Carnival Corp.,* No. 10–21716–CIV–JORDAN [D.E. 17 at 4]. The conclusory allegation that Carnival had prior knowledge of an undefined hazard that caused Plaintiff's injury is insufficient to sustain a negligence claim based on Celebrity's duty to warn.

Celebrity next argues that Plaintiff's Complaint should be dismissed to the extent that Plaintiff seeks to expand the scope of Celebrity's duty by basing its negligence claim upon, among other things, Celebrity's "failure to provide a safe excursion"; Celebrity's "failing to warn plaintiff that Wrave would require the Plaintiff to execute a 'Waiver of Liability'"; "failing to ascertain Plaintiff's level of ability to participate in the shore excursion"; "failing to provide prompt and proper medical care"; and by violating the International Safety Management Code [D.E. 9 at 6–7]. In Celebrity's view, because Plaintiff's injury occurred during an offshore excursion, Celebrity's only duty was a duty to warn of known dangers. *Id.* Plaintiff argues that the duty to warn is just one component of Celebrity's duty of reasonable care, and that Celebrity is seeking to narrow the scope of the duty it owes to its passengers [D.E. 20 at 9–14].

As previously discussed, a common carrier ship owner's duty of reasonable care to its passengers "does not cease at each port of call." *Carlisle,* 475 So.2d at 251. When this duty is extended to passengers beyond the port, "the exercise of reasonable care is defined as the duty to warn of

dangers on shore that are not open and obvious, of which the cruise line had actual or constructive knowledge, and that exist in places where passengers are invited or reasonably expected to visit." *Lapidus v. NCL America, LLC,* 924 F.Supp.2d 1352, 1356–57 (S.D.Fla.2013) (citing *Carlisle,* 475 So.2d at 251). *See also Moseley v. Carnival Corp.,* No. 13–20416–CIV, 2013 WL 5913833, at *3 (S.D.Fla. Oct. 31, 2013) ("Beyond the point of debarkation, a cruise line *only* owes its passengers a duty to warn of known dangers in places where passengers are invited or reasonably expected to visit") (emphasis added); *Chaparro,* 693 F.3d at 1336 (recognizing that the rule from *Carlisle* is "consonant with the federal maritime standard of 'ordinary reasonable care under the circumstances' "). Thus, where cruise ship passengers are invitees or expected visitors at offshore locations, a ship operator's duty of care is limited to the duty to warn.

■ However, an issue not squarely addressed by the Parties or by the applicable case law is the nature and scope of a cruise ship operator's duty when the cruise line allegedly owns or controls the offshore property where the injury occurred. In his Complaint, Plaintiff has alleged that Celebrity was a co-owner or manager of the "High Hopes! High Ropes!" excursion along with Wrave, Ltd. [D.E. 1 ¶¶ 7, 14]. Though the briefing is not clear on this point, it appears Plaintiff is arguing that Celebrity's alleged role as co-owner or manager carried with it additional duties beyond the duty to warn [D.E. 20 at 6]. And while Celebrity disputes Plaintiff's characterization of its role with the excursion as one of control or ownership [D.E. 9

at 1; D.E. 26 at 6], the Court must accept this factual allegation as true for purposes of this motion. *See Speaker,* 623 F.3d at 1379. As Celebrity's role in the excursion is a factual question, Celebrity's argument about the scope of the duty of care it owed to passengers is an issue better left for summary judgment.[8] *See Bridgewater v. Carnival Corp.,* No. 10–22241–CIV, 2011 WL 817936, at *2 n. 3 (S.D.Fla. March 2, 2011); *Gentry v. Carnival Corp.,* No. 11–21580–CIV, 2011 WL 4737062, at *4 (S.D.Fla. Oct. 5, 2011).

■ However, the Court will grant Celebrity's motion to dismiss as to two of Plaintiff's theories of negligence liability: Celebrity's alleged failure to provide medical care [D.E. 1 ¶¶ 22(m), 22(n) ], and Celebrity's alleged failure to abide by the International Safety Management Code. *Id.* at ¶ 24. Because a cruise ship has no duty to provide doctors or other medical personnel to its passengers, it "cannot be held liable for allegedly failing to fulfill a duty to provide medical care that it does not owe to passengers, regardless of whether the passengers are on the ship or on land participating in an excursion." *Lapidus v. NCL America, LLC,* No. 12–21183–CIV, 2012 WL 2193055, at *4 (S.D.Fla. June 14, 2012) (citing *Barbetta v. S/S Bermuda Star,* 848 F.2d 1364, 1369–72 (5th Cir.1988)); *see also Mumford v. Carnival Corp.,* 7 F.Supp.3d 1243, 1248–49, No. 13–22604–CIV, 2014 WL 1243786, at *4 (S.D.Fla. March 18, 2014); *Walsh v. NCL (Bahamas) Ltd.,* 466 F.Supp.2d 1271, 1273 (S.D.Fla.2006) (holding that a cruise ship "has no duty under the established law of *Barbetta* to provide [a passenger]

8. The Court notes that Plaintiff's allegation of Celebrity's ownership interest in the rope excursion is contradicted by the affidavit of Philip Rolle offered by co-defendant Wrave, Ltd. in its motion to dismiss for lack of personal jurisdiction [D.E. 16–1 ¶¶ 22–23]. Any Amended Complaint by Plaintiff should contain sufficient factual allegations to support the allegation that Celebrity had an ownership or management interest in the shore excursion.

with medical services. Thus to the extent that Plaintiff alleges that NCL had a duty to provide her with medical services . . . such claim fails as a matter of law"). Similarly, the International Safety Management Code does not create any duties and thus cannot be the basis for a negligence claim against a cruise line.[9] *Zapata v. Royal Caribbean Cruises, Ltd.*, No. 12–21897–CIV, 2013 WL 1296298, at *3 (S.D.Fla. March 27, 2013); *Lapidus*, 2012 WL 2193055 at *4; *Rinker v. Carnival Corp.*, 753 F.Supp.2d 1237, 1243 (S.D.Fla. 2010).

For the reasons stated above, Celebrity's Motion to Dismiss Count I of the Complaint is GRANTED IN PART. Plaintiff's negligence claim based on Celebrity's alleged breach of its duty to warn is dismissed without prejudice. Any negligence claims based on Celebrity's alleged breach of its duty to provide medical services, and its alleged failure to follow the International Safety Management Code are dismissed with prejudice.

### 2. Plaintiff's Apparent Agency/Agency by Estoppel Claim Against Celebrity

■ In Count III of his Complaint, Plaintiff has brought a claim against Celebrity for vicarious liability based on apparent agency [D.E. 1 ¶¶ 34–38]. A claim of apparent agency is established when: 1) the alleged principal makes some sort of manifestation causing a third party to believe that the alleged agent had authority to act for the benefit of the principal; 2) that such belief was reasonable; and 3) that the claimant reasonably acted on such belief to his or her detriment. *Doonan v. Carnival Corp.*, 404 F.Supp.2d 1367, 1371

(S.D.Fla.2005) (internal citations omitted). Under apparent agency, "it is the manifestation by the cruise ship to the third party that is controlling." *Id.* at 1371–72. Celebrity argues that Plaintiff has failed to establish the manifestation element of this claim [D.E. 9 at 7].

■ The determination of whether a cruise line has made a manifestation that could cause a third party to believe that a tour operator is an agent of the cruise line is a question of fact. *See Lobegeiger v. Celebrity Cruises, Inc.*, No. 11–21620–CIV, 2011 WL 3703329, at *10 (S.D.Fla. Aug. 23, 2011). Plaintiff alleges that Celebrity manifested an apparent agency relationship with Wrave by: arranging the shore excursion; marketing the excursion using the Celebrity logo; selling the shore excursions from a desk aboard the ship; and recommending that Plaintiff not engage in other tours not sold through Celebrity [D.E. 1 ¶ 11(a-e) ]. Several other courts of this district have found similar factual allegations sufficient for an apparent agency claim to survive a motion to dismiss. *See, e.g., Gayou*, 2012 WL 2049431 at *8–9; *Zapata*, 2013 WL 1296298 at *5; *Lapidus*, 2012 WL 2193055 at *5; *Gibson*, 2012 WL 1952667 at *7. The Court finds that Plaintiff has pleaded sufficient allegations to sustain a claim based on apparent agency.

■ Celebrity also argues that Plaintiff's apparent agency claim must fail because Plaintiff signed a waiver releasing Wrave Ltd. or its agents from any liability from any injury sustained while participating in the shore excursion [D.E. 9–1]. In response, Plaintiff argues that any consideration of the release is premature at the

---

**9.** Plaintiff also argues that it may rely on the International Safety Management Code in order to establish a claim of negligence *per se* [D.E. 20 at 17 n. 4]. However, Plaintiff did not plead the elements of negligence *per se* in its Complaint. *See Zapata*, 2013 WL 1296298 at *3 (dismissing a negligence *per se* claim that did not contain allegations that the Plaintiff "was within the class of persons protected by the ISMC, nor what portion of the ISMC relates to [the Plaintiff's] injuries").

motion to dismiss stage, and that the release is void under 46 U.S.C. § 30509.

Generally, at the motion to dismiss stage, a court may not consider anything beyond the face of the complaint and any documents attached thereto. *Financial Sec. Assurance, Inc. v. Stephens, Inc.,* 500 F.3d 1276, 1284 (11th Cir.2007). There is an exception to this rule where the Plaintiff refers to a document in its complaint, the document is central to Plaintiff's claim, its contents are not in dispute, and the Defendant attaches the document to its motion to dismiss—as Celebrity has done here. *Id.* While Plaintiff does refer to the liability waiver in his complaint [D.E. 1 ¶ 22(p-t), ¶ 31(r-s) ], this document is not so central to Plaintiffs claim as to compel the Court to stray from the four corners of the complaint at this stage of the litigation. Waiver and release are more properly considered as affirmative defenses. *See* Fed.R.Civ.P. 8(c)(1). For these reasons, the Court will confine its analysis to the complaint itself and find that Plaintiff has stated a valid claim for apparent agency. Celebrity's motion to dismiss Count III of the Complaint is therefore DENIED.

### 3. Plaintiff's Joint Venture Claim

In Count IV of the Complaint, Plaintiff alleges that Celebrity and Wrave were engaged in a joint venture, making each co-defendant liable for the other's alleged negligence [D.E. 1 ¶¶ 39–46]. Celebrity argues that Plaintiff has failed to plead the *prima facie* elements of a joint venture claim.

To assert a joint venture claim, a plaintiff must allege: (1) the intention of the parties to create a joint venture; (2) joint control or right of control; (3) joint proprietary interest in the subject matter of the joint venture; (4) the right of all venturers to share in the profits; and (5)

the duty of both to share in the losses. *Hung Kang Huang v. Carnival Corp.,* 909 F.Supp.2d 1356, 1361 (S.D.Fla.2012) (citing *Skeen v. Carnival Corp.,* No. 08–22618–CIV, 2009 WL 1117432, at *3 (S.D.Fla. April 24, 2009)). These elements are to be treated as "only signposts, likely indicia, but not prerequisites" to stating a claim. *Id.* (quoting *Fulcher's Point Pride Seafood, Inc. v. M/V Theodora Maria,* 935 F.2d 208, 211 (11th Cir.1991)). Celebrity argues only that Plaintiff has failed to plead that the defendants intended to form a joint venture [D.E. 9 at 11–12].

In his Complaint, Plaintiff alleges that Celebrity and Wrave "entered into an agreement" in which Celebrity marketed, sold and organized excursions for passengers which Wrave would then provide with equipment and personnel [D.E. 1 ¶ 15(a-d) ]. The Complaint further alleges that Celebrity "operated and/or supervised" the excursion business while Wrave "owned and operated" the venture. *Id.* at ¶¶ 16–17. In addition, the Complaint alleges that both defendants had a right to share in the profits of the joint venture, and both would share any losses. *Id.* at ¶ 44(c-d).

In stating a claim for joint venture, a plaintiff need not explicitly plead that the parties intended to enter into a joint venture; the intent of the venturers may be inferred from the conduct alleged in the complaint. *See Fulcher's,* 935 F.2d at 213 ("[W]hatever the true intent of the parties, their conduct (and the intent thereby evidenced) created a joint venture"); *see also Skeen,* 2009 WL 1117432 at *3 (declining to infer an intent to enter into a joint venture where plaintiff failed to allege an agreement between the parties or other facts supporting an inference of intent). Here, Plaintiff has alleged that the defendants entered into an agreement together, and pursuant to that agreement

they jointly operated the shore excursion where Plaintiff was injured. The Court finds that these allegations are sufficient to support an inference that the parties intended to create a joint venture. *See Lapidus,* 2012 WL 2193055 at *6; *Gentry,* 2011 WL 4737062 at *7; *Haese v. Celebrity Cruises, Inc.,* No. 12–20655–CIV, 2012 WL 3808596, at *3 (S.D.Fla. May 14, 2012). Therefore, Celebrity's Motion to Dismiss Count IV of the Complaint is DENIED.

### 4. Plaintiff's Third Party Beneficiary Claim

██ In Count V of the Complaint, Plaintiff asserts a claim as a third-party beneficiary to a contract between Celebrity and Wrave [D.E. 1 ¶¶ 47–51]. Celebrity argues that Plaintiff has failed to plead the required elements of the claim, and that the factual allegations are too conclusory to meet the pleading standard of *Iqbal* and *Twombly* [D.E. 9 at 12–13].

██ To plead a breach of a third-party beneficiary contract, Plaintiff must allege (1) the existence of a contract to which Plaintiff is not a party; (2) an intent, either expressed by the parties, or in the provisions of the contract, that the contract primarily and directly benefit Plaintiff; (3) breach of that contract by one of the parties; and (4) damages to Plaintiff resulting from the breach. *Lapidus,* 924 F.Supp.2d at 1360–61. For a third party to have a legally enforceable right under the contract, the benefit to the third party must be the "direct and primary object of the contracting parties." *Bochese v. Town of Ponce Inlet,* 405 F.3d 964, 982 (11th Cir.2005). The third parties do not need to be specifically named in the contract to qualify as intended beneficiaries, as "long as the contract refers to a well-defined class of readily identifiable persons that it intends to benefit." *Belik v. Carlson Travel Group, Inc.,* 864 F.Supp.2d 1302,

1312 (S.D.Fla.2011) (internal citations omitted). However, the parties' intent to benefit the third party "must be specific and must be clearly expressed in the contract in order to endow the third party beneficiary with a legally enforceable right," and "incidental or consequential benefit" to a third party is insufficient to sustain a claim. *Bochese,* 405 F.3d at 982.

In his Complaint, Plaintiff alleges that Celebrity and Wrave entered into a contract to provide excursions to Celebrity passengers, and that the contract "clearly manifested the intent" to benefit third-party passengers "by requiring Wrave to exercise reasonable care in the operation of the subject excursion" [D.E. 1 ¶¶ 48–49]. The Complaint then lists 21 ways by which Wrave allegedly breached its contract with Celebrity. *Id.* at ¶ 50.

Celebrity argues that Plaintiff's claim must fail because Plaintiff alleges only that Wrave breached the contract, not Celebrity [D.E. 9 at 12–13]. Plaintiff states that the omission was a "typo," and that he intended to allege that both Wrave and Celebrity breached the contract [D.E. 20 at 26]. The omission is of no moment, however, because the Complaint contains a more fundamental problem: it fails to allege any facts showing that Celebrity and Wrave clearly and specifically expressed their intent for the contract to benefit Plaintiff or any other third parties. Because Plaintiff has failed to plead factual allegations sufficient "to raise a right to relief above the speculative level," this claim must fail. *Twombly,* 550 U.S. at 545, 127 S.Ct. 1955; *see also Lapidus,* 2012 WL 2193055, at *7; *Bridgewater,* 2011 WL 817936, at *3. To the extent that Plaintiff alleges that Wrave and Celebrity contracted to ensure the safety of Celebrity's passengers, this is far too generalized to support a third-party beneficiary claim. *See Lapidus,* 924 F.Supp.2d at 1361; *Gayou,*

2012 WL 2049431, at *11; *Gentry,* 2011 WL 4737062 at *8–9.

For these reasons, Celebrity's motion to dismiss Count V of the Complaint is GRANTED.

### C. Conclusion

For the reasons stated above, it is ORDERED AND ADJUDGED as follows:

1. Defendant Wrave, Ltd.'s motion to dismiss the Complaint for lack of personal jurisdiction [D.E. 65] is GRANTED. Plaintiffs claims against Wrave, Ltd., are DISMISSED WITH PREJUDICE.

2. Defendant Celebrity's motion to dismiss Count I of the Complaint for failure to state a claim is GRANTED IN PART. Plaintiffs negligence claim based on Celebrity's failure to warn is DISMISSED WITHOUT PREJUDICE. Plaintiff may replead this theory of liability in an Amended Complaint, provided Plaintiff alleges sufficient factual allegations to support this claim. However, to the extent that Plaintiff has pleaded negligence based on Celebrity's alleged failure to provide medical care or its failure to follow the International Safety Management Code, this portion of Plaintiff's negligence claim is DISMISSED WITH PREJUDICE.

3. Celebrity's motion to dismiss Count III of the Complaint for failure to state a claim is DENIED.

4. Celebrity's motion to dismiss Count IV of the Complaint for failure to state a claim is DENIED.

5. Celebrity's motion to dismiss Count V of the Complaint for failure to state a claim is GRANTED. Plaintiff may replead this claim in an Amended Complaint, provided Plaintiff alleges sufficient factual allegations to support the claim.